## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **84 LUMBER COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1748** |
| **F.H. PASCHEN, S.N. NIELSEN &** | **SECTION "C" (5)** |
| **ASSOCIATES, LLC, et al.** | |

### ORDER AND REASONS[1]

Before the Court are 84 Lumber Company's ("84 Lumber") Motion to Stay Proceedings and Compel Arbitration and Maggie's Management, LLC's ("Maggie's") Motion to Stay Proceedings and Compel Arbitration, or, in the alternative, to Dismiss under Federal Rule of Civil Procedure 12(b)(6) and for Partial Dismissal under Rule 9(b).  Rec. Docs. 44, 54.  J & A Construction Management Resources Co., Inc. ("J & A") opposes these Motions.  Rec. Docs. 62, 63.  Having examined the memoranda of counsel, the record, and the applicable law, the Motions are GRANTED IN PART and DENIED IN PART for the following reasons.

### I. BACKGROUND

84 Lumber was a sub-subcontractor to J & A, that in turn was subcontractor to a general contractor, F.H. Paschen, S.N. Nielsen & Associates, LLC ("Paschen"), in the course of two school construction projects in New Orleans.  Rec. Doc. 1 at 2-3.  These projects were backed by several surety companies, including Continental Casualty Company, Safeco Insurance Company of America, and Fidelity and Deposit Company of Maryland (collectively, "Sureties").  Rec. Doc. 1 at 2.

---

[1] Ashley Stockton, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

84 Lumber filed the initial suit against Paschen and the Sureties, alleging that despite performing its portions of the subcontracted work for J & A under the Master Service Agreement ("MSA") between J & A and 84 Lumber, 84 Lumber was not paid in full for the work performed. Rec. Doc. 1 at 4.  84 Lumber also demands payment for extra work performed outside the MSA subcontract, and for the supply of materials.  Rec. Doc. 1 at 4.  Paschen answered the complaint and added J & A as a third-party defendant.  Rec. Doc. 25.  J & A filed an answer asserting a crossclaim against Paschen and counterclaims against 84 Lumber for breach of contract, interference with contractual relationship, fraudulent misrepresentation, conversion, and unjust enrichment.  Rec. Doc. 39.  J & A also added Maggie's, an affiliate bonding agent of 84 Lumber, as a third-party defendant in the fraudulent misrepresentation, conversion, and unjust enrichment claims.  Rec. Doc. 39.

84 Lumber then filed a motion to stay the proceedings and compel arbitration of the claims of J & A based on the arbitration clause in the MSA.  Rec. Doc. 44.  Maggie's filed its own motion to stay the proceedings and compel arbitration, claiming the right to enforce the agreement between J & A and 84 Lumber as a non-signatory under principles of equitable estoppel.  Rec. Doc. 54.  In the alternative, Maggie's contends that J & A's claims should be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b) because the claims are factually deficient, lack the necessary elements, or are prescribed.  Rec. Doc. 54.

## II. LAW AND ANALYSIS

### A. 84 Lumber Company's Motion to Stay Proceedings and Compel Arbitration

Article 16 of the Miscellaneous Provisions of the Master Service Agreement between 84 Lumber and J & A states:

2

> The terms of this Agreement shall be governed under Louisiana law.  In the event any dispute arises out of this Agreement that cannot be resolved by the Parties, such dispute shall be submitted to final and binding arbitration.  The arbitration shall be conducted by the Parties pursuant to the Construction Industry Rules of the American Arbitration Association ("AAA") currently in effect and shall be administered by the AAA.  Such arbitration shall be held in Pittsburgh, Pennsylvania.

Rec. Doc. 39-1 at 4.  In its Motion to Stay Proceedings and Compel Arbitration, 84 Lumber argues that this arbitration clause mandates arbitration of J & A's claims under the Federal Arbitration Act ("FAA") and the Louisiana Binding Arbitration Law.  Rec. Doc. 44 at 1.  It asks that the proceeding be stayed pending arbitration.  Rec. Doc. 44 at 1.

### 1.   Standard of Review

There is a strong presumption in both federal and state law of arbitrability.  *See E.E.O.C. v. Waffle House,* 534 U.S. 279, 289, 122 S. Ct. 754, 761-62, 151 L. Ed. 2d 755 (2002); *Aguillard v. Auction Mgmt. Corp.,* 04-2804, p. 20 (La. 6/29/05); 908 So. 2d 1, 16.  Any doubts about the arbitrability of a dispute should be resolved in favor of arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983); *see also Aguillard,* 908 So. 2d at 18.  To overcome this presumption, there must be clear evidence that the parties did not intend the claim to be arbitrable.  *Harvey v. Joyce,* 199 F.3d 790, 793 (5th Cir. 2000).

In the Fifth Circuit there is a two-step inquiry to determine if an arbitration clause is enforceable.  *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002).  First, the court must determine whether the parties agreed to arbitrate.  *Id.*  This involves determining both whether there was a valid agreement to arbitrate and whether the dispute in question falls within the scope of the arbitration clause.  *Id.*  When deciding whether parties agreed to arbitrate the dispute in question courts should generally apply ordinary state-law principles that govern the formation of

3

contracts. *Webb v. Investacorp,* 89 F.3d 252, 258 (5th Cir. 1996). Second, the court must determine whether any legal constraints external to the agreement foreclose the arbitration of claims. *Fleetwood,* 280 F.3d at 1073.

### 2. Validity of the Arbitration Agreement

The Federal Arbitration Act provides that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The corresponding provision in the Louisiana Binding Arbitration Law is substantially similar. La. Rev. Stat. 1§ 9:4201; *Aguillard,* 908 So. 2d at 18. The arbitration clause in the MSA provides that any dispute that "arises out of" the MSA that cannot be resolved by the parties shall be submitted to arbitration. Rec. Doc. 39-1 at 4. As stated in 84 Lumber's Motion, the MSA was signed by J & A's president, and under Louisiana law a party who signs a written instrument is presumed to know its contents, and cannot avoid its obligations by contending that she did not read it, that she did not understand it, or that the other party failed to explain it to her. *Coleman v. Jim Walter Homes, Inc.,* 08-1221, p. 7 (La. 3/17/2009); 6 So.3d 179, 183; *Aguillard,* 908 So.2d at 17; Rec. Doc. 44-1 at 6; Rec. Doc. 39-1 at 6  For this reason, 84 Lumber contends that the MSA's arbitration clause constitutes a valid agreement to arbitrate. Rec. Doc. 44-1 at 7.

In its opposition memorandum, J & A argues that the contract and therefore the agreement to arbitrate are invalid because the contract was initially conceived upon a fraudulent inducement by 84 Lumber. Rec. Doc. 62 at 2. A contract is formed by the consent of the parties, but consent may be vitiated by error, fraud, or duress. La. Civ. Code art. 1927. La. Civ. Code art. 1948. J &

A claims that its consent to the MSA is vitiated by fraud. Rec. Doc. 62 at 6. It alleges it would not have signed the agreement had it known that 84 Lumber was "misrepresenting the terms of the agreement and their intent to abide by the contract." Rec. Doc. 62 at 6. J & A relies on *George Engine Co., Inc. v. S. Shipbuilding Corp.* to show that lack of consent is a strong ground for the revocation of a contract, and that the revocation of a contract as a whole for reason of fraud is an issue for courts, not arbitrators, to decide. *George Engine,* 350 So.2d 881, 884-885 (La. 1977); Rec. Doc. 62 at 7. J & A would have this Court revoke the contract and render the agreement to arbitrate void. Rec. Doc. 62 at 7.

However, the Supreme Court's interpretation of the Federal Arbitration Act mandates that J & A's fraud in inducement claim as to the contract as a whole should be decided by an arbitrator instead of the court. *See Preston v. Ferrer,* 552 U.S. 346, 349, 128 S. Ct. 978, 981, 169 L. Ed. 2d 917 (2008). J & A and 84 Lumber agree that the arbitration provision at issue in this case is governed by the FAA, which applies to contracts evidencing a transaction involving commerce, as well as the Louisiana Binding Arbitration Law. 9 U.S.C. § 2; Rec. Doc. 44-1 at 1; Rec. Doc. 62 at 4. The FAA preempts state laws that contradict the purpose of the FAA in cases involving transactions which affect commerce. *Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327, 338 n.7 (5th Cir. 2004); *Aguillard,* 908 So. 2d at 8. J & A and 84 Lumber engaged in the performance of a contract as citizens of different states, which means that the transaction involved interstate commerce and reinforces that the FAA applies. *Atlantic Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1280 (5th Cir. 1994); Rec. Doc. 67 at 4. Therefore, although both the FAA and the Louisiana Binding Arbitration law are cited by the parties as the applicable laws, the FAA

applies and preempts the state law if there is a discrepancy between the two.  *Freudensprung,* 379 F.3d at 338 n.7; *Aguillard,* 908 So. 2d at 8.

Under the FAA, claims challenging the existence of the entire contract – and not the arbitration clause itself – on the basis of fraud in the inducement are to be decided by the arbitrator, not the federal court.  *See Preston,* 552 U.S. at 349; *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445-46, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006); *Prima Paint Corp. v. Flood & Conklin MFG, Co.,* 388 U.S. 395, 403-04, 87 S. Ct. 1801, 1806, 18 L. Ed. 2d 1270 (1967).  As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.  *Buckeye,* 546 U.S. at 445.  Given that the FAA governs the arbitration clause and preempts the state law, J & A's use of *George Engine* is incorrect.  The court in *George Engine* interpreted the Louisiana Binding Arbitration Act as requiring the court, not an arbitrator, to decide a challenge to the contract as a whole.  *George Engine*, 350 So. 2d at 884-885.  However, the court in that case was not interpreting the FAA, and was therefore able to choose not to apply *Prima Paint* on state law grounds.  *Id.* at 886.  This does not change the standard set forth and reiterated by the Supreme Court, holding that *for purposes of the FAA*, (1) an arbitration clause is severable from the remainder of the contract, and (2) unless the challenge is to the arbitration clause itself, the contract's validity is decided by the arbitrator.  *Preston,* 552 U.S. at 353; *Buckeye,* 546 U.S. at 445-46; *Prima Paint,* 388 U.S. at 403-04.

In this case, J & A has not specifically challenged the validity of the arbitration provision. It opposes arbitration on the ground that the MSA as a whole is void due to the alleged fraudulent inducement on the part of 84 Lumber.  Rec. Doc. 62 at 5.  As there is no challenge by J & A to the arbitration clause itself, under the federal substantive law interpreting the FAA, it is possible for the

arbitration clause to be severed from the rest of the contract.  The claim of fraud in the inducement of the contract as a whole does not automatically negate the validity of the arbitration agreement itself, and the question of whether the contract as a whole is invalid should be decided by an arbitrator.  *See Preston,* 552 U.S. at 349.

### 3. Scope of the Arbitration Clause

The other consideration in determining whether 84 Lumber and J & A agreed to arbitrate is whether the dispute in question falls within the scope of the arbitration agreement.  *Fleetwood,* 280 F.3d at 1073.  The MSA's arbitration clause provides that any dispute that "arises out of" the agreement that cannot be resolved by the 84 Lumber and J & A must be submitted to final and binding arbitration.  Rec. Doc. 39-1 at 4.  In the Fifth Circuit, a dispute "arises out of or relates to" a contract if the legal claim underlying the dispute could not be maintained without reference to the contract.  *Tittle v. Enron Corp.,* 463 F.3d 410, 422 (5th Cir. 2006).  A claim does not "arise out of or relate to" a contract if it is completely independent of the contract and could be maintained without reference to the contract.  *Id.*

Count One of J & A's counterclaim against 84 Lumber is a claim for breach of the MSA. Rec. Doc. 39 at 11.  Count Two alleges that 84 Lumber intentionally interfered with J & A's contractual relationship with Paschen in part by failing to perform its obligations under the MSA. Rec. Doc. 39 at 11.  The claims in both Counts One and Two undeniably arise out of the MSA, as they could not be maintained without reference to the MSA.  Counts Three, Four, and Five are claims of Fraudulent Misrepresentation, Conversion, and Unjust Enrichment, which are tort claims rather than contract claims.  Rec. Doc. 39 at 13-14.  However, as 84 Lumber states in its Motion, all three claims arise out of 84 Lumber's alleged failure to obtain payment and performance bonds

for J &A in connection with J & A's subcontracts with Paschen.  Rec. Doc. 44 at 7-8; Rec. Doc. 39 at 13-15.  J & A alleges that 84 Lumber violated guarantees under the MSA to obtain these payment and performance bonds for J & A, and Counts Three, Four, and Five arise out of 84 Lumber's alleged failure to fulfill these guarantees.  Rec. Doc. 39 at 13-15.

Arbitration is favored in the law, and parties to an arbitration agreement "cannot avoid [that agreement] by casting their claims in tort, rather than in contract."  *Grigson v. Creative Artists Agency,* 210 F.3d 524, 526 (5th Cir. 2000) (citations omitted).  A tort claim is arbitrable if it is "so interwoven with the contract that it could not stand alone."  *Ford v. NYLCare Health Plans of Gulf Coast, Inc.,* 141 F.3d 243, 250 (5th Cir. 1998).  Although they are tort law claims, Counts Three, Four, and Five also arise out of the alleged breaches of the MSA.  They are not independent of the contract and are therefore subject to arbitration.  *See Tittle,* 463 F.3d at 422.

### 4.  *Legal Constraints External to the Agreement*

The last part of the inquiry in deciding whether an arbitration clause is enforceable is a determination of whether there are any legal constraints external to the agreement that foreclose the arbitration of the claims.  *Fleetwood,* 280 F.3d at 1073.  Parties that have made a bargain to arbitrate "should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S. Ct. 3346, 3354-55, 87 L. Ed. 2d 444 (1985).

84 Lumber submits that there are no such constraints, and maintains that it knows of no statute that would preclude or foreclose the arbitration of the sort of claims made by J & A.  Rec. Doc. 44-1 at 8-9.  84 Lumber represents that J & A's construction-related counterclaims are exactly the type of claims commonly arbitrated pursuant to mandatory arbitration agreements, and notes that

the American Arbitration Association established its Construction Industry Rules to govern the arbitration of disputes like those at issue here.  Rec. Doc. 44-1 at 9.

J & A's only contention on this matter is that arbitration should not be held in the interest of fairness and economy.  Rec. Doc. 62 at 8.  This Court finds this argument unpersuasive.  As 84 Lumber points out in its reply memorandum, although Congress recognized that the enforcement of arbitration agreements would usually promote efficient dispute resolution, the "preeminent concern  in passing the act was to enforce private agreements into which the parties had entered." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S. Ct. 1238, 1242-1243, 84 L. Ed. 2d 158 (1985); Rec. Doc. 67 at 8.  The Court in *Dean Witter* held that the FAA "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 217.  Considerations of fairness and judicial economy have no place where there is a valid arbitration agreement.  This Court is offered no evidence of other legal constraints external to the agreement that might foreclose the arbitration of the claims.  84 Lumber's Motion to Compel Arbitration should therefore be GRANTED.

**B. Maggie's Management, LLC's Motion to Stay Proceedings and Compel Arbitration**

In its Motion to Stay Proceedings and Compel Arbitration, Maggie's argues that controlling jurisprudence permits it, as a non-signatory to the MSA, to compel arbitration of J & A's claims against it.  Rec. Doc. 54-1 at 2.  Maggie's contends that J & A's claims against it rely on the terms of the MSA, and that J & A raises allegations of substantially interdependent and concerted misconduct between 84 Lumber and Maggie's arising from obligations that originate under the MSA.  Rec. Doc. 54-1 at 2.

A non-signatory can compel arbitration of claims brought against it by a signatory to a written agreement containing an arbitration clause in two circumstances through the application of equitable estoppel. *Grigson,* 210 F.3d at 527. First, it may do so when the signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Id.* Second, it may do so when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.*

Both Maggie's and J & A allege that J & A relies in each count on the terms of the agreement of the MSA in asserting its claims of fraudulent misrepresentation, conversion, and unjust enrichment against 84 and Maggie's. Rec. Doc. 54-1 at 6-7; Rec. Doc. 63 at 6. As discussed previously, these counts did "arise out of" the MSA. *Tittle,* 463 F.3d at 422. J & A also alleges that there was "interdependent and concerted misconduct" between Maggie's and 84, and alleges that the two parties worked together to defraud J & A on the performance bonds. Rec. Doc. 63 at 6. Based on J & A's reliance on the MSA in asserting its claims against Maggie's and J & A's allegations of concerted misconduct, Maggie's contends that it can compel J & A's claims to arbitration as a non-signatory. Rec. Doc. 54-1 at 6-8.

J & A concedes that pursuant to *Grigson,* if the claims against 84 Lumber go to arbitration, then the claims against Maggie's, as a non-signatory that relied on the terms of the written agreement and acted in concert with a signatory, should also be subject to arbitration. Rec. Doc. 63 at 6-7. Its only argument in opposition to Maggie's Motion is that the underlying contract is void due to fraudulent inducement. Rec. Doc. 63 at 5. As discussed in relation to 84 Lumber's Motion, claims challenging the existence of the entire contract on the basis of fraud in the inducement are to be decided by the arbitrator, not the court. *See Preston,* 552 U.S. at 349; *Buckeye,* 546 U.S. at 445-46; *Prima Paint,* 388 U.S. at 403-04. The law provides, and both parties agree, that Maggie's

10

may compel J & A's claims to arbitration since 84 Lumber's claims are arbitrable. *Grigson,* 210 F.3d at 527.  Therefore Maggie's Motion to Compel Arbitration should be GRANTED.

### III. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion to Stay Proceedings and Compel Arbitration filed by 84 Lumber Company is GRANTED.  Rec. Doc. 44.

IT IS FURTHER ORDERED that the Motion to Stay Proceedings and Compel Arbitration filed by Maggie's Management, LLC is GRANTED.  Rec. Doc. 54.[2]

IT IS FURTHER ORDERED that Maggie's Management, LLC's alternative Motion to Dismiss or for Partial Dismissal is necessarily DENIED.

New Orleans, Louisiana, this 24th day of July, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**

---

[2] J & A additionally requests in its opposition memorandum that the claims of all parties involved in this litigation be submitted to arbitration if its own claims are submitted.  Rec. Doc. 62 at 8.  This request is not properly before the Court.  The Court also notes that in making this request, J & A only provides law to indicate why Paschen should be compelled to arbitrate, but does not provide any law to indicate why the Sureties, also parties to the litigation, should be compelled to arbitrate. This does not preclude J & A from bringing a separate Motion to Compel Arbitration of the claims of any or all other parties to this litigation.