UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **84 LUMBER COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1748** |
| **F.H. PASCHEN, S.N. NIELSEN & ASSOCIATES, LLC, et al.** | **SECTION: "C" (5)** |

## ORDER AND REASONS[1]

Before this Court is J & A Construction's ("J & A") Motion to Compel Paschen to Arbitration. Rec. Doc. 94. F.H. Paschen, S.N. Nielson & Associates, LLC ("Paschen") opposes this motion. Rec. Doc. 97. Having examined the memoranda of counsel, the record, and the applicable law, the Motion to Compel Paschen to Arbitration is DENIED.

## I. BACKGROUND

As stated previously by this Court, this case arises out of a construction contract dispute initially between 84 Lumber, the sub-subcontractor, and Paschen, the general contractor of a school construction project, and the surety companies ("Sureties") backing the construction project. Rec. Doc. 70 at 1-2. 84 Lumber filed suit against Paschen and the Sureties, alleging that despite performing its portions of the subcontracted work for J & A under the Master Service Agreement ("MSA") between J & A and 84 Lumber, 84 Lumber was not paid in full for the work performed. *Id.* at 2. 84 Lumber also asserted claims demanding payment for extra work performed outside the MSA subcontract and for the supply of materials. *Id.* J & A, the subcontractor who was brought in as a third-party defendant by Paschen, filed a counterclaim

---

[1] Jennifer Watkins, a third-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

1

against 84 Lumber. *Id.* Subsequently, 84 Lumber filed a motion to stay the proceedings and compel arbitration of J & A's claims based on the arbitration clause between 84 Lumber and J & A in the MSA. *Id.* On July 24, 2013 this Court granted 84 Lumber's motion to stay the proceedings and compel arbitration of the claims between J & A and 84 Lumber. Rec. Docs. 70, 71. After that, 84 Lumber moved to reopen the case related to the non-arbitrable claims and defenses, which the Court denied on November 12, 2013. Rec. Docs. 72, 86. 84 Lumber next moved to set a deadline by which J & A had to initiate arbitration, which J & A opposed. Rec. Docs. 87, 88. This Court has granted 84 Lumber's motion and has ordered a deadline of May 30, 2014 for the commencement of the arbitration between 84 Lumber and J &A. Now J & A has moved to compel Paschen to arbitration. Rec. Doc. 94.

## II. LAW & ANALYSIS

In the order staying proceedings to compel arbitration between both 84 Lumber and Maggie's Management ("Maggie's") and J & A, this Court noted that J & A's request to submit all parties' claims to arbitration was not properly before this Court and that J & A could bring a separate claim to compel arbitration of these parties. Rec. Doc. 70 at 11, n 2. Because J & A's motion was not properly before the Court, this Court did not consider it at that time.

J & A argues that non-signatories to an arbitration agreement may be compelled to arbitrate in certain circumstances that J & A contends apply here. Rec. Doc. 94-1 at 3-4. J & A points to a Fifth Circuit case that permitted a nonsignatory to compel arbitration under the doctrine of equitable estoppel when its claims were "intertwined with and dependent upon" the contract containing the arbitration clause. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000). In fact, this Court relied up on the *Grigson* case when it determined that

Maggie's could compel arbitration of its own claims because of the interdependence between the MSA and the claims asserted by J & A against Maggie's. Rec. Doc. 70 at 10. However, in both the *Grigson* case and with Maggie's, it was the *nonsignatory* that was seeking to compel the arbitration. *See Grigson*, 210 F.3d at 527; Rec. Doc. 70 at 9. Fifth Circuit jurisprudence has since clarified that there is a difference between a signatory seeking to estop a nonsignatory from joining in the arbitration and a signatory seeking to estop a nonsignatory from *avoiding* arbitration:

> The Grigson version of estoppel applies only to prevent a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. Because arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.

*Bridas S.A.P.I.C. et al. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003) (internal citations omitted). The court goes on to explain:

> [T]he result in Grigson and similar cases makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory. . . "It is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others."

*Id.* (citing J. Douglas Uloth & J. Hamilton Rial, III, Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate—A Bridge Too Far?, 21 Rev. Litig. 593, 633 (2002)). The court concludes by stating that even if the claims are inextricably intertwined, that is not enough to justify using equitable estoppel to compel a nonsignatory to arbitrate. *Id.* Here J & A premises its arguments on this idea: "Paschen should be compelled to arbitrate its claims with J & A and 84 Lumber. . . because the claims are inextricably intertwined." Rec. Doc. 94-1 at 4. J & A argues that estoppel is warranted under *Grigson* regarding for two reasons: because 84

3

Lumber relied on the terms of the MSA in its claims against Paschen and because J & A alleges interdependent and concerted misconduct between Paschen and 84 Lumber.  Rec. Doc. 94-1 at 5-6.  However, this Court finds that the rationale of *Grigson* does not apply here and that when evaluated under *Bridas*, the interdependence is irrelevant when it is a signatory attempting to compel an unwilling nonsignatory to arbitrate.

J & A also argues that a nonsignatory can be bound to an arbitration agreement when it has relied on the terms of the written agreement subject to the arbitration.  Rec. Doc. 94-1 at 7.  Here, J & A argues that Paschen has asserted that J & A and 84 Lumber were joint venturers and this can only be established through reference to the terms of the MSA.  However, even if this reliance indicates that the claims are inextricably intertwined, based on *Bridas,* this is not enough to compel a nonsignatory to arbitrate.

Finally J & A argues that Paschen should be compelled to arbitrate under the theory of direct benefit estoppel. Rec. Doc. 94-1 at 8.  "'Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their nonsignatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006)).  "A nonsignatory can "embrace" a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining "direct benefits" from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Services, Inc.*, 620 F.3d at 473.

J & A argues that Paschen embraced the agreement between J & A and 84 Lumber by

4

working directly with 84 Lumber and that Paschen received direct benefits in the forms of work performed and lien bonds supplied by 84 Lumber that were required by Paschen.  Rec. Doc. 94-1 at 8.  This Court however finds that when Paschen worked with 84 Lumber it was based on the relationship between contractor and sub-subcontractor on a job site and  in reliance on Paschen's written contract with J & A and not the contract between J & A and 84 Lumber that is subject to arbitration.  Rec. Doc. 25  at 2-3.   The Court also finds that the lien bonds were required under the contract between Paschen and J & A and again, not the contract between J & A and 84 Lumber that is subject to arbitration.  Rec. Doc. 25 at 6.  J & A has offered no evidence that Paschen knew of the specific terms of the MSA to support the "knowingly exploited" standard of direct benefits estoppel.  *See Noble Drilling Services, Inc.*, 620 F.3d at 474 (finding the nonsignatory could not be compelled to arbitrate under the theory of direct benefits estoppel when there was no evidence that the nonsignatory knew of the terms of the arbitration agreement).

     J & A also argues that Paschen has asserted claims that indicate its reliance on the MSA in its dealings with J & A and 84 Lumber. Rec. Doc. 94-1 at 8.  However, this Court finds that Paschen has asserted claims based on 84 Lumber and J & A's failures to perform work as required under the contract between Paschen and J & A. Rec. Doc. 25 at 2-3; 4.   Paschen's claims are not seeking to enforce specific terms of the MSA, nor must its counterclaims be determined solely by reference to the MSA.  *See Noble Drilling Services, Inc.*, 620 F.3d at 474 (finding no direct benefits estoppel because the nonsignatory did not have to base its claims on the arbitration agreement and could, as a plaintiff bringing claims, disclaim any reliance thereupon).  When this Court denied 84 Lumber's motion to reopen the case it did so because the

arbitration proceeding between 84 Lumber and J & A would decide issues and facts related to the MSA that were common to both the arbitration and portions of the underlying litigation. Rec. Doc. 86 at 3.  This Court noted that the litigation issues contingent upon the MSA involved 84 Lumber's claims against Paschen and the Sureties, and not Paschen's counterclaims against 84 Lumber and J & A.  Rec. Doc. 86 at 3-4.  Specifically, 84 Lumber has asserted that despite performing its portion of the subcontracted work under the MSA for J&A, it was not paid in full for the work performed.  Rec. Doc. 86 at 3-4. As such the theory of direct benefit estoppel does not compel Paschen to arbitrate.

Accordingly,

IT IS ORDERED that the Motion to Compel Paschen to Arbitration is DENIED. Rec. Doc. 94.

New Orleans, Louisiana this 25th day of March, 2014.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**