UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

84 LUMBER COMPANY                                    CIVIL ACTION

VERSUS                                                    NO. 12-1748

F.H. PASCHEN, S.N. NIELSEN &              SECTION "R" (5)
ASSOCIATES, LLC, ET AL.

## ORDER AND REASONS

Before the Court is Third-Party Defendant Fidelity and Deposit Company of Maryland's (Fidelity) motion for partial summary judgment.[1] Also before the Court is Fidelity's motion for partial judgment on the pleadings.[2]  For the following reasons, the Court GRANTS both motions.

## I.    BACKGROUND

This case arises out of two school construction projects in New Orleans, Louisiana, the Mildred Osborne Project and the South Plaquemines Project.[3] Third-party plaintiff F.H. Paschen, S.N. Nielsen & Associates, LLC (Paschen) was the general contractor on both projects.  Paschen subcontracted part of the projects to defendant J & A Construction Management Resources

---

[1]    R. Doc. 185.
[2]    R. Doc. 186.
[3]    R. Doc. 70.

Company, Inc. (J & A), and J & A subcontracted its obligations to plaintiff 84 Lumber Company (the sub-subcontracts). Fidelity issued two performance bonds for each of the sub-subcontracts between J & A and 84 Lumber.[4] The bonds, dated October 4, 2010, and October 22, 2010, guaranteed 84 Lumber's performance under the sub-subcontracts with J & A.[5] Both performance bonds clearly on their face identify 84 Lumber as the Principal, J & A as the Obligee, and Fidelity as the Surety.[6] On October 7, 2010, and October 22, 2010, respectively, Fidelity added riders to both performance bonds, which amended the bonds by naming Paschen as a dual obligee.[7] Both riders stated that "[e]xcept as herein modified, said Performance Bonds shall be and remain in full force and effect."[8]

On July 5, 2012, 84 Lumber sued Paschen, Fidelity, and the other surety companies, alleging that it was not paid in full for work performed under its Master Service Agreement with J & A.[9] It also alleged that it was entitled to payment for materials and for additional work performed outside of the Master Service Agreement. Paschen answered 84 Lumber's complaint

---

[4]   R. Doc. 185-9 at 1; R. Doc. 185-10 at 1. Continental Casualty Company and Safeco Insurance Company of America were also sureties.

[5]   *Id.*

[6]   *Id.*

[7]   R. Doc. 185-9 at 4; R. Doc. 185-10 at 2.

[8]   *Id.*

[9]   R. Doc. 1.

and added J & A as a third-party defendant.[10]  Paschen's answer also asserted counterclaims against Fidelity, alleging that the breach of contract by 84 Lumber and J & A made Fidelity liable to Paschen for those damages.[11]

The case was stayed for nearly three years while the parties attempted to resolve their claims through arbitration.[12]  On January 13, 2016, this case was reassigned from Judge Berrigan's chambers to this Court for all further proceedings.[13]  On May 5, 2016, the Court granted 84 Lumber's motion to lift the stay in this case and to dismiss J & A's claims against 84 Lumber for failure to prosecute.[14]

With the case reopened, Fidelity now moves for summary judgment and judgment on the pleadings on Paschen's claims.  Paschen filed an opposition to both motions,[15] and Fidelity filed replies for both.[16]

---

[10]     R. Doc. 25.

[11]     *Id.* at 6-7 ¶¶ 31-32.

[12]     For a history of the failed arbitration process, *see* R. Doc. 151 at 1-6.

[13]     R. Doc. 144.

[14]     R. Doc. 151.  J & A's claims were also dismissed against Maggie's Management, LLC.

[15]     R. Doc. 192; R. Doc. 193.

[16]     R. Doc. 197; R. Doc. 199.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, Fed. Prac. and Proc. Civ.2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257,

1264-65 (5th Cir. 1991) (internal quotation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

## B.   Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). It is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words,

the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

Paschen asserts two claims against Fidelity, both arising out of Fidelity's performance bonds guaranteeing 84 Lumber's performance in the sub-subcontracts between J & A and 84 Lumber. The first claim seeks damages for the failure of both J & A and 84 Lumber to perform under the "J & A Subcontracts." The second claim specifically seeks to recover damages that Paschen is allegedly entitled to recover because of its status as a dual obligee on the performance bonds issued by Fidelity.[17] Fidelity moves for summary judgment on Paschen's first claim and judgment on the pleadings on Paschen's second claim. Each will be addressed in turn.

---

[17] *Id.* at 7 ¶ 32.

7

## A.    Summary Judgment

Paschen's first claim against Fidelity asserts damages arising out of the breach by 84 Lumber and J &A of the "J & A Subcontracts," which Paschen itself defines as the contract between Paschen and J & A.[18]  Fidelity argues it is entitled to summary judgment as a matter of law on this claim because it cannot be held liable for 84 Lumber's breach of the "J & A Subcontracts" as 84 Lumber is not a party to that subcontract, nor did Fidelity bond that subcontract.[19]  Further, Fidelity argues that it cannot be held liable for J & A's breach of any contract because Fidelity guaranteed only 84 Lumber's, not J & A's, performance.[20]   In response, Paschen contends that one of the performance bonds is ambiguous as to which contract the bond covers, and therefore the intention of the parties must determine the scope of the performance bonds.[21]

### 1.  Scope of the  Performance Bonds

Fidelity asserts, and Paschen does not dispute, that the performance bonds at issue are conventional bonds, governed by Louisiana's general

---

[18]     *Id.* at 1 ¶ 18.

[19]     R. Doc. 185-1 at 2.

[20]     *Id.*

[21]     R. Doc. 192 at 1-2.  Paschen also argues that summary judgment is inappropriate as to Paschen's claims arising out of its status as a dual obligee.  This argument will be discussed in the section addressing Fidelity's judgment on the pleadings.

suretyship law.  *See T & R Dragline Serv., Inc. v. CNA Ins. Co.*, 796 F.2d 133, 134-35 (5th Cir. 1986) (citing *Elliot Construction Co., Inc. v. United States Fidelity & Guaranty Co.*, 424 So. 2d 1202, 1204 (La. App. 1 Cir. 1982)). Under Louisiana law, "suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."  La. Civ. Code art. 3035.  Suretyship contracts must be express and in writing, *id.* art. 3038, and the suretyship "may be qualified, conditioned, or limited in any lawful manner," *id.* art. 3040.  Suretyship will not be presumed, and the scope of the suretyship will be limited to the express terms of the contract.  *See First Nat. Bank of Crowley v. Green Garden Processing Co., Inc.*, 387 So. 2d 1070, 1072-73 (La. 1980) (recognizing that suretyship contracts can be limited to their express terms); *Shelter Prod., Inc. v. Am. Constr. Hotel Corp.*, 655 F. App'x 1012, 1015 n.4 (5th Cir. 2016) (per curiam).

Here, the suretyship was created by the performance bonds issued by Fidelity.  Both bonds state:

KNOW ALL MEN BY THESE PRESENTS:

That 84 Lumber, . . . as Principal, . . . , and Fidelity and Deposit Company of Maryland . . . as Surety, . . . are held and firmly bound unto J & A Construction Management Resources Co. Inc. . . . as Obligee, . . . , in the amount of ($1,400,000.00/$5,879,950.00), for the payment of which Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated (10/01/2010 / 10/20/2010) entered into a *subcontract with Obligee* for (Mildred Osborn School/South Plaquemines High School) in accordance with drawings and specifications prepared by (Fauntelory & Latham Architects/Verges Rome Architects) which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That, if Principal shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.[22]

A plain reading of both performance bonds reveals that Fidelity guaranteed 84 Lumber's performance under both sub-subcontracts between J & A and 84 Lumber, and only 84 Lumber's performance.  Neither performance bond makes a reference to any contract to which 84 Lumber is not a party, or to any other subcontract for that matter.

---

[22]    R. Doc. 185-9 at 1 (emphasis added); R. Doc. 185-10 at 1 (emphasis added).  The parenthetical entries refer to the Mildred Osborne contract and the South Plaquemines contract, respectively.

Despite the clear and unambiguous language of the performance bonds, Paschen argues that the scope of the bonded obligations under the bonds is ambiguous because both bonds "provide only a general description of the source of the bonded obligations," and because one of the bonds lists an incorrect date for the incorporated subcontract.[23]  Paschen argues that the Court must look to extrinsic evidence to resolve the ambiguities.  Neither of Paschen's arguments on ambiguity is persuasive.

Surety contracts are governed by the same rules of interpretation as contracts in general.  *Ferrell v. S. Cent. Bell Tel. Co.*, 403 So. 2d 698, 700 (La. 1981).  In Louisiana, the issue of the ambiguity, *vel non*, of a contract is a legal question.  *Doré Energy Corp. v. Prospective Inv. & Trading Co., Ltd.*, 570 F.3d 219, 225 (5th Cir. 2009).  If the contract is not ambiguous, then interpreting it is also a legal issue for the court.  *Id.*  A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.  *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002).

---

[23]    R. Doc. 193.

11

First, that the bonds generally describe the source of the bonded obligation does not suggest ambiguity, and Paschen cites no caselaw implying that it does or that there is a specificity requirement for conventional bonds.  But even if there were, the bonds clearly identify 84 Lumber as the Principal and J & A as the Obligee, clearly identify the contract between the Principal (84 Lumber) and the Obligee (J & A) as the bonded contract, and clearly guarantee the performance of the Principal (84 Lumber).  None of that is ambiguous, and the scope of the obligation is clearly limited to 84 Lumber's performance of its sub-subcontract with J & A.

Second, Paschen attempts to create ambiguity by pointing out that the performance bond for the South Plaquemines project refers to and incorporates a subcontract between J & A and 84 Lumber dated October 20, 2010.[24]  Paschen notes that there is no contract in the record dated October 20, 2010, and the contract attached to Fidelity's motion for summary judgment purporting to be the sub-subcontract between J & A and 84 Lumber is actually dated December 3, 2010.[25]  But that the date referred to

---

[24]    R. Doc. 185-10 at 1.  Because the date on the Mildred Osborne performance bond matches the date on the Mildred Osborn sub-subcontract between J & A and 84 Lumber, Paschen does not argue that the Mildred Osborne performance bond is ambiguous because of an erroneous date.

[25]    R. Doc. 185-8.

in the performance bond may be a typographical error does not create ambiguity as which contract is bonded or as to whose performance is guaranteed by Fidelity's bond, especially since the bond clearly identifies the parties to the contract and that the bond guarantees the performance of the Principal 84 Lumber.  In Louisiana, each provision in a contract must be interpreted in light of the entire contract as a whole.  *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013).  And as a whole, the performance bond is not ambiguous as to which contract is bonded and whose performance is guaranteed.  Thus, because the bond is clear and unambiguous, the Court will not consider parol evidence to vary the terms of the performance bonds.  *See* La. Civ. Code art. 1848; *McCarroll v. McCarroll*, 701 So. 2d 1280, 1286 (La. 1997) (noting that parol evidence is inadmissible to vary the terms of an unambiguous contract).

Further, even if the Court agreed that the erroneous date meant that the performance bond was ambiguous to the point where parol evidence could be considered, the evidence in the record does not show a genuine issue of material fact as to which contract is bonded or whose performance is guaranteed by the performance bond.  The performance bond clearly refers to an October 20, 2010 contract between J & A and 84 Lumber for the South

13

Plaquemines High School.[26]  The bond also clearly limits its obligations to 84 Lumber's obligations under the subcontract between 84 Lumber and J & A.[27]  Fidelity has submitted a December 3, 2010 contract between J & A and 84 Lumber for the South Plaquemines High School, establishing 84 Lumber's obligations.[28]  Paschen has submitted no evidence whatsoever indicating that the performance bonds bonded a contract other than the one between J & A and 84 Lumber or that the bonds guaranteed the performance of any party besides 84 Lumber.  Therefore, even if the Court found there is an erroneous date on the South Plaquemines performance bond, Paschen has failed to create a genuine issue of material fact as to the scope of the guarantee of the performance bond.  *See Archie v. Acceptance Indem. Ins. Co.*, 507 F. App'x 451, 454 (5th Cir. 2013) (per curiam) ("[A]ny ambiguity introduced into the policy by the typographical error in the second part of the provision does not create a genuine issue of material fact as to whether the insurance policy exclusion applied.").

Because the Court finds that Fidelity's obligations under the bonds are clear and unambiguous, Fidelity cannot be held liable for a breach of the subcontract between Paschen and J & A, nor can Fidelity be held liable for

---

[26]   R. Doc. 185-10 at 1.

[27]   *Id.*

[28]   R. Doc. 185-8.

any breach committed by J & A.  Therefore, Fidelity is entitled to summary judgment as a matter of law as to Paschen's claims arising out of J & A's breach of its subcontract with Paschen.[29]

## B.    Judgment on the Pleadings

Paschen's second claim against Fidelity is unrelated to any breach by J & A and to the subcontract between Paschen and J & A.  Instead, Paschen's second claim alleges that Paschen is entitled, as a dual obligee, to recover from Fidelity damages it sustained from 84 Lumber's breach.[30]   Fidelity moves for judgment on the pleadings on this claim, noting that the performance bonds clearly set out certain conditions precedent to Fidelity's obligations.[31]  Fidelity argues that Paschen's third-party complaint does not adequately plead the satisfaction of the conditions precedent as required under Rule 9(c) of the Federal Rules of Civil Procedure and therefore should be dismissed.

---

[29]    Fidelity's motion for summary judgment also argues that Paschen's status as a dual obligee does not alter the scope of Fidelity's bonded obligations.  R. Doc. 185-1 at 6.  Because Paschen's response does not argue that Paschen's status as a dual obligee alters the scope of Fidelity's obligations, the Court need not address it.

[30]    R. Doc. 25 at 7 ¶ 32.

[31]    R. Doc. 186-1 at 6.

In support, Fidelity points to the text of the performance bonds and the riders that added Paschen as a dual obligee.  The performance bonds both state:

> *Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract*, the Obligee having performed Obligee's obligations thereunder:
> (1)    Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
> (2)    Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligations under the subcontract subject to the provisions of paragraph 3 herein;
> (3)    The balance of the subcontract price . . . shall be credited against the reasonable cost of completing performance of the subcontract.  If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the aggregate liability of the Surety exceed the amount of this bond.[32]

Additionally, both riders to the performance bonds state that "the name of F.H. Paschen SN Nielsen & Associates LLC shall be added to said Bond as a Named obligee" and that "[e]xcept as herein modified, said Performance Bond shall be and remain in full force and effect."[33]

In response, Paschen argues first that Fidelity's motion improperly relies on matters outside the pleadings and therefore must be considered as

---

[32]    R. Doc. 185-9 at 1 (emphasis added); R. Doc. 185-10 at 1 (emphasis added).

[33]    R. Doc. 185-9 at 4; R. Doc. 185-10 at 2.

a motion for summary judgment.[34]  Further, Paschen argues that even if the Court does not convert the 12(c) motion into a motion for summary judgment, Paschen's third-party complaint, liberally construed, satisfies the requirements of Rule 9(c).[35]  Paschen's arguments will be addressed in turn.

### 1.    Materials Beyond the Pleadings

Paschen does not specifically identify which documents Fidelity is relying on that were not attached to Paschen's pleadings.  But Fidelity does quote from the performance bonds and riders in its motion, and these documents were attached to Fidelity's motion.   Neither the performance bonds nor the riders were attached to Paschen's third-party complaint.

In considering a motion to dismiss for failure to state a claim, a court must typically limit itself to the contents of the pleadings, including their attachments.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002) (discussing standard that governs the materials district court may properly consider in deciding a Rule 12(c) motion).  Federal Rule of Civil Procedure 12(d) establishes that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

---

[34]     R. Doc. 193 at 1.
[35]     *Id.* at 5-6.

presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Thus, while Paschen is correct that the Court cannot consider matters outside the pleadings without converting Fidelity's motion into a motion for summary judgment, the documents relied on by Fidelity in this motion are not outside the pleadings. The Fifth Circuit has repeatedly held that a court may properly consider documents attached to a motion to dismiss if the documents are referred to in the complaint and central to the plaintiff's claim. *See, e.g., Collins*, 224 F.3d at 498-99; *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Paschen's complaint clearly refers to both the performance bonds and the riders that made Paschen a dual obligee.[36] Further, both the bonds and the riders are central to Paschen's claims, as Paschen seeks, as dual obligee, to recover damages from 84 Lumber's alleged failure to perform—a performance that Fidelity guaranteed.[37] Because the Court can consider the performance

---

[36]   R. Doc. 25 at 6 ¶ 31 ("Paschen required J & A to furnish Paschen with a payment and performance bond for each project. Thereafter, 84 Lumber assisted J & A in complying . . . by furnishing to J & A a bond issued by Fidelity . . . ."); *id.* ("And at the request of 84 Lumber, [Fidelity] named Paschen as a dual obligee on the bonds . . . .").

[37]   *Id.* at 7 ¶ 32 ("Paschen is also entitled to recover from [Fidelity] pursuant to Paschen's status as a dual obligee all that Paschen sustained

bonds and riders without converting Fidelity's motion into a motion for summary judgment, Paschen's argument to the contrary is meritless.

### 2. Conditions Precedent Under Rule 9(c)

Fidelity contends, and Paschen does not dispute, that there are two conditions precedent to trigger Fidelity's obligations and/or liability under the performance bonds. The conditions are (1) that 84 Lumber be in default of the bonded sub-subcontract between 84 Lumber and J & A, and (2) that 84 Lumber be declared in default by one of the obligees. *See L & A Contracting Co. v. So. Concrete Servs., Inc.*, 17 F.3d 106, 109, 109 n.6 (5th Cir. 1994) (interpreting identical language in performance bond to impose same two conditions as above). Additionally, Paschen does not argue that the riders to the performance bond negated the conditions precedent or somehow excuse Paschen from compliance.[38]

Federal Rule of Civil Procedure 9(c) instructs plaintiffs that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c);

---

from . . . 84 Lumber's non-performance and breach of the J & A Subcontracts under the dual obligee bond.").

[38]   This argument would fail. *See Travelers Cas. and Sur. Co. of Am. v. Univ. Facilities, Inc.*, No. 10-1682, 2011 WL 1558009, at *4-5 (E.D. La. Apr. 25, 2011) (holding that party made additional obligee to performance bond was bound by terms and conditions of bond).

*see also Bettes v. Stonewall Ins. Co.*, 480 F.2d 92, 98 (5th Cir. 1973).  Fidelity argues that Paschen has neither specifically nor generally alleged satisfaction of the conditions precedent.  Paschen's third-party complaint makes no general allegation that all conditions precedent have occurred or have been performed.  A review of the complaint, however, reveals that Paschen pleaded the satisfaction of the first condition.  Paschen's complaint alleges that "84 Lumber's performance was substandard, in violation of [84 Lumber's] Subcontracts with J & A."[39]  Further, Paschen alleges that "as a result of *those defaults* by J & A and 84 Lumber," Paschen incurred damages.[40]  Drawing all reasonable inferences in favor of Paschen, this allegation is sufficient to plead the first condition precedent that 84 Lumber was in default.

Nevertheless, the satisfaction of the second condition precedent, that Paschen declare 84 Lumber in default, is not pleaded anywhere on the face of Paschen's complaint.  Nor can Paschen conflate its reference to substandard performance by 84 Lumber with a declaration of default.  This condition precedent requires that Paschen have taken action to declare 84 Lumber in default, which is not alleged.

---

[39]     R. Doc. 25 at 2-3 ¶ 22.

[40]     *Id.* at 3 ¶ 23 (emphasis added).

Because Paschen failed to meet the requirements of Rule 9(c), its claim against Fidelity must be dismissed.  *See United States v. Trimble*, 86 F.R.D. 435, 437 (S.D. Fla. 1980) (dismissing claim because of failure to allege performance or occurrence of conditions precedent); *Blount v. Kay*, No. 14-336, 2016 WL 698146, at *5 (S.D. Miss. Feb. 19, 2016) (same); *cf. Probado Techs. Corp. v. Smartnet, Inc.*, No. 09-349, 2010 WL 2232831, at *8 (S.D. Tex. June 2, 2010) (denying motion to dismiss because plaintiff's general allegations that it performed its contractual obligations satisfied Rule 9(c)).

### 3.    *Conform Pleadings to Evidence*

Paschen argues that if the Court determines that it has failed to meet the requirements of Rule 9(c), it should be afforded to opportunity to conform its pleadings to the evidence.[41]  At the outset, the Court notes that Federal Rule of Civil Procedure 15(b)(2), which allows parties to amend their pleadings to conform them to the evidence is clearly inapplicable here, as Rule 15(b) covers amendments "during and after trial."  Fed. R. Civ. P. 15(b); *see also id.* (b)(2) ("When an issue not raised by the pleadings *is tried* by the parties' express or implied consent, . . . .  A party may move—at any time, even after judgment—to amend the pleadings to conform them to evidence.") (emphasis added).   Similarly, Paschen's reliance on *Nat G. Harrison*

---

[41]    R. Doc. 193 at 6.

*Overseas Corp. v. Am. Tug Titan*, 516 F. 2d 89, 95-96 (5th Cir.), *modified*, 520 F.2d 1104 (5th Cir. 1975), is unavailing because *Nat G.* addressed, post-trial, a claim that not only the parties consented to trying, but was in fact tried.

Furthermore, the liberal standards of Rule 15(a) no longer apply in this case. The scheduling order in this case set a deadline for amendments of pleadings, and the deadline of July 11, 2016, has passed.[42] Instead, any request to amend Paschen's pleadings would be governed by Rule 16(b)(4), which states "[a] schedule may be modified only for good cause and with the judge's consent." *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (noting that Rule "16(b) governs amendment of pleadings once a scheduling order has been issued by the district court").

The good cause test has four factors, and the party seeking to modify the scheduling order bears the burden to establish that the test has been met. *Id.* at 536. In the context of untimely motions to amend pleadings, the Court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in

---

[42]   R. Doc. 154 at 2.

allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (internal modifications and quotation marks omitted).

As Paschen incorrectly argued that Rule 15 governed, Paschen has made no attempt to establish good cause. Therefore, Paschen gives no explanation whatsoever as to its failure to timely move for leave to amend. This weighs heavily against Paschen's request, especially since Paschen filed its third-party complaint on February 5, 2013, nearly four years ago.[43] And while the amendment is important because Paschen's claim will fail without it, this importance is insufficient to overcome Paschen's lack of explanation of its failure to timely seek leave to amend. Further, Paschen fails to demonstrate that its amendment would not cause prejudice to Fidelity. *See Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 238-39 (5th Cir. 2015). Finally, the availability of a continuance to cure that prejudice is unlikely given that there are multiple parties to this lawsuit, the suit was originally filed in 2012, and the trial date is less than three weeks away. Therefore, Paschen has failed to show good cause and the Court will not allow Paschen to amend its complaint.

---

[43]    R. Doc. 25.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Fidelity's motion for partial summary judgment and DISMISSES Paschen's claims against Fidelity that arise out of the breach of Paschen's subcontract with J & A.  The Court also GRANTS Fidelity's motion for judgment on the pleadings and DISMISSES Paschen's claim against Fidelity arising out of 84 Lumber's breach of its subcontract with J & A.

New Orleans, Louisiana, this ___3rd___ day of February, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE