UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

84 LUMBER COMPANY                                    CIVIL ACTION

VERSUS                                               NO. 12-1748

F.H. PASCHEN, S.N. NIELSEN &                         SECTION "R" (5)
ASSOCIATES, LLC, ET AL.


## ORDER AND REASONS

Defendants F.H. Paschen, S.N. Nielsen & Associates, LLC ("Paschen"),

Continental Casualty Company, Safeco Insurance Company of America, and

Fidelity and Deposit Company of Maryland (collectively, "Defendants")

move for partial summary judgment on plaintiff 84 Lumber Company's

Louisiana Public Works Act claims and unjust enrichment claim.[1]  For the

following reasons, the Court grants defendants' motion.


## I.    BACKGROUND

This case arises out of two school construction projects in New Orleans,

Louisiana, the Mildred Osborne Project and the South Plaquemines Project.[2]

On July 26, 2010, Paschen entered into an agreement with the Louisiana

---

[1]    R. Doc. 220.
[2]    R. Doc. 1 at 2-3 ¶ 5.

Department of Education to build a new elementary school at the Mildred Osborne School in New Orleans (Osborne Project).[3] Paschen was the General Contractor for the project.[4] On September 13, 2010, Paschen entered into a contract with the Plaquemines Parish School Board to build the South Plaquemines High School in Buras, Louisiana (South Plaquemines Project).[5] As with the Osborne Project, Paschen was the General Contractor for the South Plaquemines Project.[6] Both projects were subject to the provisions of the Louisiana Public Works Act (LPWA), La. Rev. Stat. § 38:2241, *et seq.*, and therefore each project required payment bonds before construction could begin.[7] Continental, Safeco, and Fidelity (collectively, "Sureties") issued the required bonds.[8]

Paschen subcontracted a portion of both projects to J & A Construction Management Resources Company, Inc. (J & A).[9] On November 19, 2010, J & A entered into a Master Service Agreement with 84 Lumber Company, in

---

[3] R. Doc. 214-24 at 1.
[4] *Id.*
[5] R. Doc. 214-7 at 2.
[6] *Id.*
[7] R. Doc. 1 at 3 ¶ 6.
[8] *See* R. Doc. 214-25 (Bond for Osborne Project); R. Doc. 214-8 (Bond for South Plaquemines Project).
[9] R. Doc. 1 at 3 ¶ 7. *See also* R. Doc. 214-26 (Osborne Project Subcontract); R. Doc. 214-9 (South Plaquemines Project Subcontract).

which J & A subcontracted a portion of its work on both projects to 84 Lumber.[10]

According to 84 Lumber, in April 2011, Paschen and J & A stopped paying 84 Lumber for its work on the projects.[11] As a result, on November 29, 2011, 84 Lumber filed sworn statements of claims for money owed on both projects in compliance with the LPWA. Specifically, 84 Lumber claimed at least $549,778.16 for the Osborne Project and at least $1,666,921.66 for the South Plaquemines Project.[12] On December 1, 2011, 84 Lumber, through its counsel, sent letters by certified mail to Paschen's attorney Charles F. Seemann, Jr., detailing the amounts owed, as well as a copy of the sworn statements.[13] 84 Lumber also mailed notice of the sworn statements to the Sureties.[14]

In an attempt to "compromise partially their differences," Paschen and 84 Lumber entered into two agreements in May 2012, covering both projects.[15] Under the agreements, Paschen agreed to pay 84 Lumber $1,297,603, and 84 Lumber agreed to indemnify, defend, and hold Paschen

---

[10]    R. Doc. 1 at 3 ¶ 8.  *See also* R. Doc. 214-10 at 1, 6, 12.
[11]    R. Doc. 1 at 3-4 ¶ 9.  *See also* R. Doc. 214-11 at 1.
[12]    R. Doc. 217-27 at 4; R. Doc. 214-13 at 4.
[13]    R. Doc. 213-13 at 1, 6; R. Doc. 213-29 at 1.
[14]    R. Doc. 214-14; R. Doc. 214-30.
[15]    R. Doc. 214-31 (Osborne Project); R. Doc. 214-15 (South Plaquemines Project).

harmless from any claims, liens, or other expenses that arose from or in connection with 84 Lumber's work on the projects.[16]  On or about May 17, 2012, 84 Lumber cancelled its November 2011 sworn statements for both projects and removed them from the mortgage records of Orleans Parish and Plaquemines Parish, respectively.[17]

Less than one month after cancelling both statements, on June 8, 2012, 84 Lumber filed two new sworn statements of claims, one for each project. 84 Lumber claimed $808,520.39 for the Osborne Project, and $1,042,080.09 for the South Plaquemines Project.[18]  84 Lumber reflected in two June 2012 letters mailed to the Plaquemines Parish School Board, and to the Louisiana Department of Education and the Sureties, respectively, that 84 Lumber had emailed Paschen's attorney Seemann copies of the sworn statements.[19]

On July 5, 2012, 84 Lumber sued Paschen and the Sureties, alleging that 84 Lumber was not paid in full for work performed under its Master Service Agreement with J & A.[20]  84 Lumber sued under the LPWA, seeking

---

[16]     R. Doc. 214-31 at 2; R. Doc. 214-15 at 2.
[17]     R. Doc. 214-20; R. Doc. 210 at 8.
[18]     R. Doc. 214-32 at 4 (Osborne Project); R. Doc. 214-21 at 7 (South Plaquemines Project).
[19]     R. Doc. 214-22 at 1; R. Doc. R. Doc. 213-32 at 1.
[20]     R. Doc. 1.

4

payment on its June 2012 Sworn Statements of Claims from both Paschen and the Sureties, and brought a claim of unjust enrichment.[21]   On February 5, 2013, 84 Lumber amended its complaint to add a breach of contract claim, as well as a claim for payment for materials and additional work performed outside of the Master Service Agreement.[22]   Paschen answered 84 Lumber's complaint and added J & A as a third-party defendant.[23]

The case was stayed for nearly three years while the parties were to pursue their claims through arbitration.[24]  On January 13, 2016, the case was reassigned from Judge Helen Berrigan to this Court for all further proceedings.[25]   On May 5, 2016, the Court granted 84 Lumber's motion to lift the stay and to dismiss J & A's claims against 84 Lumber for failure to prosecute.[26]

---

[21]   *Id.* at 4-6 ¶¶ 13-14, 16, 18.

[22]   R. Doc. 28 at 4, 6 ¶¶ 10, 20.

[23]   R. Doc. 25.

[24]   For a history of the failed arbitration process, *see* R. Doc. 151 at 1-6.

[25]   R. Doc. 144.

[26]   R. Doc. 151.  J & A's claims were also dismissed against Maggie's Management, LLC.

With the case reopened, defendants now move for partial summary judgment on 84 Lumber's LPWA claims and its unjust enrichment claim. 84 Lumber filed a response,[27] and defendants replied.[28]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at

---

[27]    R. Doc. 222.
[28]    R. Doc. 228.

1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for

trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

84 Lumber asserts two claims under the LPWA: 1) recognition and enforcement of its sworn statement of claims for amounts owed to 84 Lumber; and 2) a payment claim seeking interest, costs, and attorneys' fees.[29] Defendants argue that the two LPWA claims must be dismissed because 84 Lumber failed to comply with the statute's notice requirements.[30] As to the unjust enrichment claim, defendants argue that this claim must be dismissed because 84 Lumber has other legal remedies available.[31]

---

[29]    R. Doc. 1 at 4-5 ¶¶ 12-14, 15-16.
[30]    R. Doc. 220-1 at 9-14. Defendants also argue, independently of its notice argument, that 84 Lumber released and waived both of its LPWA claims against them in the May, 2012 agreements with Paschen. *Id.* at 15. Because the Court resolves this motion on the notice argument, it does not reach defendants' waiver argument.
[31]    *Id.* at 17.

### A.     Waiver of Defenses

84 Lumber contends that defendants' notice and waiver arguments are affirmative defenses and that defendants failed to plead or preserve them properly.[32]  Thus, according to 84 Lumber, these defenses are not properly before the Court.  The Court rejects this argument.  Although defendants' 2013 answer does not specifically mention these defenses, the February 10, 2017 pretrial order, signed by the parties, includes them both.[33]  It "'is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues . . . to be presented at trial.'"  *Vanhoy v. United States*, 514 F.3d 447, 450 n.10 (5th Cir. 2008) (quoting *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996)).  Additionally, after the trial date was continued, the Court's March 2, 2017 Scheduling Order allowed the parties to amend their pleadings.[34]  Paschen and the Sureties both filed amended answers that pleaded the notice and waiver defenses.[35]

Moreover, there is a good faith exception to waiver of affirmative defenses when the defense is raised after the pleadings but there is no undue

---

[32]     R. Doc. 222 at 4.

[33]     *See* R. Doc. 210 at 22 ("84 Lumber did not provide proper notice to Paschen with regard to its LPWA claims."); *Id.* at 23 (discussing May 2012 agreements and arguing that the "agreements are binding and enforceable, and defeat 84 Lumber's present claims.").

[34]     R. Doc. 216 at 2.

[35]     *See* R. Doc. 223 at 6; R. Doc. 224 at 6.

prejudice. *Kariuki v. Tarango*, 709 F.3d 495, 508 (5th Cir. 2013) ("An affirmative defense is not waived if the defendant 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'") (quoting *Pasco ex rel. Pasco v. Knoblauch*, 556 F.3d 572, 577 (5th Cir. 2009) (citation omitted)). 84 Lumber has not even attempted to show prejudice. Further, it has had ample opportunity to respond to these defenses, since it signed the pretrial order which included them, and had the benefit of a continuance to address them. As defendants' did not waive their affirmative defenses, the Court will proceed to address them.

## B.    Notice Under the LPWA

Under the Louisiana Public Works Act, contracts for projects like the Osborne Project and the South Plaquemines Project require bonds "for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242." *See* La. Rev. Stat. § 38:2241(A)(2). Section 2242(A)(1) defines a "claimant" as:

> any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or for transporting and delivering such materials or supplies to the site of the job by a for-hire carrier, or for furnishing oil, gas, electricity, or other materials or supplies for use in machines

used in the construction, alteration, or repair of any public works, . . .

*Id.* § 38:2242(A)(1). The LPWA provides two avenues of relief for "claimants" who are owed money for work on public work projects. They can file an action against the general contractor and the sureties on the project's statutory bond, or they can seek "the unexpended fund[s] in the possession of the public entity with whom the original contract was entered into" by filing an action against the public authority. *Pierce Foundations, Inc. v. Jaroy Const., Inc.*, 190 So. 3d 298, 301 (La. 2016) (quoting *Wilkin v. Dev Con Builders, Inc.*, 561 So. 2d 66, 70 (La. 1990)). Here, 84 Lumber's LPWA claims are actions on the projects' statutory bonds, and 84 Lumber does not seek money from the contracting public authorities.

Section 2247 governs the notice requirements for actions seeking payment from a project's statutory bonds, and states:

> Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, . . .; except that before any claimant having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the

11

party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.

La. Rev. Stat. § 38:2247.

If the claimant and the general contractor are in contractual privity, then the claimant need not file a sworn statement in order to have a right of action against the general contractor and its surety. *Pierce*, 190 So. 3d at 304-05. If, as here, the claimant is not in contractual privity with the general contractor, the claimant will not have a right of action under the LPWA against the contractor or its sureties unless it satisfies the requirements of section 2247. In other words, the claimant must provide written notice to the contractor, stating with substantial accuracy the amount claimed and the party to whom the labor or material was supplied, by registered or certified mail, addressed to the contractor at its office in Louisiana.

Compliance with section 2247 is a prerequisite to a right of action, and failure to comply warrants dismissal. *See Interstate Sch. Supply Co. v. Guitreau's Const. & Consulting Co.,* 542 So. 2d 138, 139 n.1 (La. App. 1 Cir. 1989); *Electric Supply Co., Inc. v. Great Am. Ins. Co.,* 973 So. 2d 827, 830 (La. App. 2 Cir. 2007) ("[T]he notice referenced in [section] 2247 is to be given to the contractor to preserve the right of action against the contractor

or the surety."); *See also, e.g., J. Reed Constructors, Inc. v. Roofing Supply Grp., L.L.C.*, 135 So. 3d 752, 754-56 (La. App. 1 Cir. 2013). Whether a claimant has satisfied the notice requirement is a legal question of statutory interpretation. *J. Reed* at 756. (citing *Livingston Parish Council on Aging v. Graves*, 105 So. 3d 683, 685 (La. 2012)). The Louisiana Supreme Court has stated that "as a general rule, lien statutes [like the LPWA] are *stricti juris* and should thus be strictly construed." *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 657 So. 2d 1307, 1313 (La. 1995) (italics in original); *see also Wilkin*, 561 So. 2d at 71 (noting that the LPWA should be "strictly construed such that the privileges granted are not extended beyond the statute[]"). As such, the Court cannot ignore the language of section 2247. *See Interstate Sch. Supply Co.*, 542 So. 2d at 139 ("[T]he specific language of [section] 2247 requires compliance with the notice requirements in order to proceed 'on the bond.' The clear language cannot be ignored.").

Defendants argue that 84 Lumber failed to comply with the LPWA notice requirements for its June 2012 claims, and point to the lack of evidence of any communication from 84 Lumber, mailed to Paschen at its office in Louisiana,[36] regarding the June 2012 claims. Further, defendants

---

[36] At all times relevant to this lawsuit, Paschen maintained an office in New Orleans, Louisiana at 541 Julia Street, Suite 302. R. Doc. 214-9 at 1; R. Doc. 214-26 at 1.

argue that any communications regarding the December 2011 sworn statements cannot satisfy the notice requirement because 84 Lumber cancelled those statements in May of 2012.

84 Lumber does not rely on its December 1, 2011 letter to Paschen in its opposition. Instead, 84 Lumber argues that Paschen had actual notice of its claims by virtue of 84 Lumber's filing its complaint, as well as emails sent to Paschen's then-attorney Charles Seemann, which 84 Lumber asserts attached copies of its sworn statements of claims.[37] 84 Lumber acknowledges that its emailed communications may not fully satisfy the language of section 2247, but argues that all that is required under section 2247 is actual notice.[38]

As to 84 Lumber's assertion that its complaint serves as notice under section 2247, this argument is foreclosed by the plain language of section 2247. The section states "*before* any claimant . . . shall have a right of action . . . he shall . . . give written notice." La. Rev. Stat. § 38:2247. A complaint asserting a right of action cannot serve as statutorily required notice if the notice is required *before* one has the right of action.

---

[37]  R. Doc. 222 at 5-6.
[38]  *Id.* at 6.

In addition to the complaint, 84 Lumber asserts that two June 2012 emails sent to Charles Seemann satisfy the notice requirements of section 2247. In doing so, 84 Lumber relies on two letters mailed on June 19, and June 20, 2012, respectively.[39] The June 19 letter was mailed from 84 Lumber's attorney Beatriz Richmond to the Louisiana Department of Education and the Sureties, and referred to the Osborne Project, while the June 20 letter, also mailed from Richmond, referred to the South Plaquemines Project and was sent to the Plaquemines Parish School Board.[40] The bottom of both letters state, "cc: Charles F. Seemann, Jr. (via e-mail only w/encl.)".[41] 84 Lumber also submits the affidavit of Jo A. Troiani, a legal secretary with Baker, Donelson, the law firm representing 84 Lumber.[42] Troiani attests that she personally emailed copies of the above June 2012 letters to Seemann, each with the sworn statement of claim attached.[43]

84 Lumber did not submit copies of the emails to Seemann,[44] and there is no evidence in the record to indicate that Seemann received the email, or

---

[39] R. Doc. 214-32; R. Doc. 214-23.
[40] R. Doc. 214-32 at 1; R. Doc. 214-23 at 1.
[41] *Id.*
[42] R. Doc. 222-3.
[43] R. Doc. 222-3 at 2 ¶¶ 5, 7.
[44] Given that 84 Lumber should be in possession of copies of these emails, 84 Lumber's failure to submit them is curious.

notified Paschen of its contents.[45]  The defendants do not concede that Seemann received the emails, but argue that even if he did, the emails regarding the June 2012 claims for the Osborne and South Plaquemines Project do not satisfy section 2247.  It is undisputed that any email sent to Seemann is not a "mailing . . . by registered or certified mail, postage prepaid, . . . addressed to the contractor at any place he maintains an office in the state of Louisiana."  La. Rev. Stat. § 38:2247.

84 Lumber cites no case accepting an email as sufficient notice under section 2247, or any case finding communications sent only to a contractor's counsel, and not the contractor itself at its Louisiana office, as sufficient under section 2247.  Acknowledging this, 84 Lumber argues that regardless of a communication's deficiencies under the plain language of section 2247, a claimant complies with section 2247 as long as the general contractor has "actual notice."[46]  This argument, which is counter to the clear text of section 2247, has not been addressed by The Louisiana Supreme Court.  Further, no Louisiana appellate case has held that actual notice is all that section 2247 requires, regardless of the extent of noncompliance with the text of the section.

---

[45]     Seemann withdrew as defendants' attorney in August, 2015, nearly a year before the case was reopened.  R. Doc. 136.

[46]     R. Doc. 222 at 6.

But Louisiana appellate cases have addressed similar arguments by plaintiffs seeking to ignore the clear text of notice provisions in the Public Works Acts[47] or to interpret the statute in ways that would find loose compliance as sufficient. For the most part, these cases have rejected these arguments and found that the clear text cannot be ignored. For example, in *Interstate School Supply*, it was undisputed that the claimant complied with the notice requirements of sections 2242 and 2247 forty-six days after the public authority's acceptance of the project. 542 So. 2d at 139. The court refused to loosely interpret the requirement of compliance within forty-five days of the authority's acceptance, and found that the claimant forfeited its right to proceed on the bond, despite being only one day late. *Id.*

Louisiana appellate courts have held that failure to provide notice *before* filing a sworn statement of claim does not comply with a similar notice provision in section 2242(F), and this noncompliance defeats a claimant's right of action. For example, in *Teche Electric Supply L.L.C. v. M.D. Descant, Inc.*, 2 So. 3d 516 (La. App. 3 Cir. 2008), the Louisiana Third Circuit Court of Appeal found that a claimant's failure to furnish notice of nonpayment before filing its lien defeated the claimant's claim, even though

---

[47] Both the LPWA and the Public Works Act apply to contracts with the Louisiana Department of Transportation and Development.

defendants unquestionably had actual notice two weeks after the lien was filed. *Id.* at 522; *see also Electric Supply Co.,* 973 So. 2d at 828-31 (finding that "clear" language of section 2242(F) requires notice before filing lien).

In a similar vein are several cases dealing with public works contracts with the Louisiana Department of Transportation and Development, which are governed by a statute with essentially identical notice requirements.[48] For example, in both *United Rentals Highway Technologies, Inc. v. St. Paul Surety*, 852 So. 2d 1200 (La. App. 2 Cir. 2003), and *Martin Marietta Materials of Louisiana, Inc. v. U.S. Fidelity and Guarantee Co.*, 940 So. 2d 152 (La. App. 2 Cir. 2006), the plaintiffs failed to file their sworn statements in accordance with the statutory provisions. In both cases, the Louisiana Second Circuit Court of Appeal affirmed the dismissal of their claims, despite

---

[48] Compare La. Rev. Stat. § 38:2247 ("[H]e shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to said contractor within forty-five days . . . , stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied . . . . Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana."), *with* La. Rev. Stat. § 48:256.12 ("[H]e shall in addition to the notice and recordation required in R.S. 48:256.5(B) give written notice to said contractor and surety within forty-five days . . . , stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied . . . . Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in envelopes addressed separately to the contractor and surety at any place each maintains an office in the state of Louisiana."

evidence in both cases that the defendants had actual notice. *See Martin Marietta*, 940 So. 2d at 157 ("It is of no moment that in the present case [defendant] acknowledged receiving a copy of the lien . . . or that [defendant] admitted in his deposition to receiving a copy of the lien."); *see also id.* ("In *United Rentals*, both [defendants] had notice, prior to [plaintiff] filing its statement of claim, that Neosho had failed to pay an invoice for goods and services provided on the project. . . . Nevertheless, despite this notice, this court still held that [plaintiff] lost its right of action because it had not complied with [the notice provisions].").

84 Lumber cites three older Louisiana appellate court cases in support of its actual notice argument. 84 Lumber's reliance on these cases is misplaced, as none holds that any actual notice alone satisfies section 2247. In *Daigle v. Donald M. Clement Contractor, Inc.*, 533 So. 2d 1064 (La. App. 4 Cir. 1988), cited by 84 Lumber, the court analyzed the pre-1985-Amendment version of section 2247, which allowed claimants to provide notice by *either* giving written notice or simply by filing a sworn statement as provided in section 2242. *See* 533 So. 2d at 1066 n.1. Further, it was undisputed in *Daigle* that the claimant not only complied with section 2247 by mailing a certified letter, but also personally delivered a written invoice to defendant. *Id.* at 1066. Most importantly, *Daigle* does not hold that

compliance with section 2247 is met whenever there is actual notice, and does not even mention "actual notice."

84 Lumber also cites *Bob McGaughey Lumber Sales, Inc. v. Lemoine Co.,* 590 So. 2d 664 (La. App. 3 Cir. 1991), and *Gilchrist Construction Co. v. Terral Riverservice, Inc.,* 819 So. 2d 362 (La. App. 3 Cir. 2002). In *McGaughey*, the only issue for the court to resolve was whether notice that complied with section 2247 in all aspects except that it was mailed through regular mail, rather than certified or registered mail, defeats one's claim. The court held that notice sent through regular mail complies with section 2247 when there is undisputed evidence that the defendant received the mailing. *McGaughey*, 590 So. 2d at 667. Therefore, all that *McGaughey* stands for is that sending notice through regular mail that otherwise complies with section 2247 will not defeat one's claims. *See also Gilchrist Const. Co.*, 819 So. 2d 362, 366-67 (relying on *McGaughey* to find that notice that otherwise complies with the statutory notice requirements delivered through regular mail as opposed to certified or registered mail will not defeat one's claims under the Louisiana Department of Transportation and Development Public Works Act). But neither *McGaughey* nor *Gilchrist* says that notice by email

to a contractor's counsel's email account, or anything about notice that is not sent to the contractor at its Louisiana office would satisfy the LPWA.[49]

The cases 84 Lumber cites are distinguishable from this matter for another reason as well. In all of them, there was undisputed evidence that the defendant-contractor had *received* the notice containing the statutorily-required information sent from the plaintiffs. *See Daigle*, 533 So. 2d at 1066; *McGaughey*, 590 So. 2d at 665; *Gilchrist*, 819 So. 2d at 366-67. Here, Troiani's affidavit establishes that she *sent* the email and its attachment, but there is no evidence indicating that Seemann *received* it, or that he brought it to Paschen.

The Court therefore finds that failure to satisfy the requirements of section 2247 is not excused by emailing counsel for the contractor. Section 2247 plainly states that claimants *shall* give written notice, and said notice *shall* be mailed to the contractor at its office in Louisiana. Because it is undisputed that 84 Lumber did not send written notice to Paschen itself, at

---

[49] *McGaughey* also states that *Daigle* "observed that what is required is actual notice." 590 So. 2d at 666. This is incorrect, as discussed above *Daigle* does not mention actual notice at all and does not hold that section 2247 solely requires actual notice.

its office in Louisiana—clear requirements of section 2247—the Court finds that 84 Lumber has not satisfied section 2247.[50]

The Court's finding that the emails to Seemann are insufficient is supported by the purpose of the delivery requirements contained in section 2247, which is to "assure actual receipt of written notice of the claim and to facilitate proof of the claim." *Martin Marietta*, 940 So. 2d at 158; *see also McGaughey*, 590 So. 2d at 666; *cf. Powers Regulator Co. v. Murphy's Plumbing Serv., Inc.,* 311 So. 2d 503, 505 (La. App. 4 Cir. 1975) (claimant failed to comply with section 2247, despite sending certified mail, because claimant had actual knowledge that notice was never received). As mentioned above, there is no evidence in the record that Seemann or Paschen received the June 2012 emails. Notably, 84 Lumber's previous communications with Seemann were not sent via email, but sent by certified

---

[50]    In addition, the communications that 84 Lumber relies on state that 84 Lumber is owed $1,850,600.48, but 84 Lumber's complaint seeks that amount plus "the full amount of all extra work performed by 84 Lumber," all apparently under the payment bond. R. Doc. 1 at 6. 84 Lumber's amended complaint seeks more than $3,200,000 in extra work, so 84 Lumber claims it is owed over $5,000,000. R. Doc. 28 at 4 ¶ 10. 84 Lumber was required to state with substantial accuracy the amount it is claiming, but a claim for $1,850,600.48 is not substantially accurate if the claimant actually seeks additional unquantified amounts, or over $5,000,000.

mail, and the record contains Seemann's acknowledged receipts of those letters.[51]

Additionally, this Court, applying Louisiana law sitting in diversity, must be cautious about adopting "substantive innovation" in state law. *See, e.g.*, *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. 1980); *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297, 313-14 (5th Cir. 1998) (collecting cases); *see also Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577-78 (6th Cir. 2004) (collecting federal cases that explain that federal courts "must proceed with caution when making pronouncements about state law") (citations omitted). It is not the role of the Court to rewrite or reinterpret section 2247, that job belongs to the Louisiana Legislature and Louisiana courts.

Thus, 84 Lumber has failed to comply with the requirements of section 2247. As compliance with the notice requirements of the LPWA is a prerequisite to claims on the payment bonds, 84 Lumber's LPWA claims fail, and defendants are entitled summary judgment on these claims as a matter of law.[52]

---

[51]     *See, e.g.*, R. Doc. 214-13 at 1, 6; R. Doc. 214-14 at 2, 4.

[52]     As mentioned above, because insufficient notice is fatal to 84 Lumber's LPWA claims, the Court need not address defendants' argument that 84 Lumber waived its claims in the May 2012 Defense and Indemnity Agreements.

### C.    Unjust Enrichment

That 84 Lumber did not comply with section 2247 does not affect its unjust enrichment claim.  But the unjust enrichment claim fails for two different reasons.  First, the LPWA provides exclusive remedies to aggrieved parties in public works projects.  *See State Through Div. of Admin. v. McInnis Bros. Const.*, 701 So. 2d 937, 944 (La. 1997).  Second, under Louisiana law, unjust enrichment is a quasi-contractual remedy, and one cannot assert a claim for unjust enrichment if other remedies are available. *See* La. Civ. Code art. 2298 (stating that unjust enrichment "shall not be available if the law provides another remedy").  Therefore, 84 Lumber cannot bring a claim for unjust enrichment.  *See, e.g., Bd. of Sup'rs of Louisiana State Univ. v. Louisiana Agr. Fin. Auth.,* 984 So. 2d 72, 81 (La. App. 1 Cir. 2008) (noting that availability of LPWA remedies precludes unjust enrichment claims, and that a claimant is not entitled to assert a claim of unjust enrichment if the claimant fails to comply with the LPWA). Defendants are entitled summary judgment as a matter of law on 84 Lumber's unjust enrichment claim.[53]

---

[53]    84 Lumber concedes that it cannot bring an unjust enrichment claim.  R. Doc. 222 at 12.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment.

New Orleans, Louisiana, this 16th day of May, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE