UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 84 LUMBER COMPANY | CIVIL ACTION |
| VERSUS | NO. 12-1748 |
| F.H. PASCHEN, S.N. NIELSEN & ASSOCIATES, LLC, ET AL. | SECTION "R" (5) |

### ORDER AND REASONS

Defendants F.H. Paschen, S.N. Nielsen & Associates, LLC ("Paschen"), Continental Casualty Company ("Continental"), Safeco Insurance Company of America, and Fidelity and Deposit Company of Maryland (collectively, "defendants") move for judgment on the pleadings[1] as to Count Six of the second amended complaint.[2] For the following reasons, the Court grants in part and denies in part defendants' motion.

### I. BACKGROUND

This case arises out of two school construction projects in Louisiana.[3] Paschen entered into an agreement with the Louisiana Department of Education to build a new elementary school at the Mildred Osborne School

---

[1] R. Doc. 272.
[2] R. Doc. 249.
[3] R. Doc. 28 at 2-3 ¶ 5.

in New Orleans ("Osborne Project").[4]  Paschen also entered into a contract with the Plaquemines Parish School Board to build the South Plaquemines High School ("South Plaquemines Project").[5]  On both projects, Paschen was the general contractor.[6]  Both projects were subject to the provisions of the Louisiana Public Works Act ("LPWA"), La. R.S. § 38:2241, *et seq.*, and therefore each project required the general contractors to post payment bonds before construction could begin.[7]  Continental, Safeco, and Fidelity (collectively, "Sureties") issued the required bonds.[8]

Paschen subcontracted a portion of both projects to J & A Construction Management Resources Company, Inc. ("J & A").[9]  J & A in turn subcontracted a portion of its work on both projects to 84 Lumber.[10]  84 Lumber alleges that Paschen and J & A have failed to compensate it for its work on the projects.[11]  As relevant here, 84 Lumber filed three statements of claim under the LPWA. *See* La. R.S. § 38:2242(B).  First, on November 2, 2011, 84 Lumber filed a statement of claim in the amount of $3,507.16 for

---

[4]  *Id.* at 3 ¶ 5.
[5]  *Id.*
[6]  *Id.* at 2 ¶ 5.
[7]  *Id.* at 3 ¶ 6.
[8]  *Id.*
[9]  *Id.* at 3 ¶ 7.
[10] *Id.* at 3 ¶ 9.
[11] *Id.* at 3-4 ¶ 9.

materials supplied on the Osborne Project.[12] Second, on June 13, 2012, 84 Lumber filed a statement of claim in the amount of $808,520.39 for work performed on the Osborne Project.[13] Third, also on June 13, 2012, 84 Lumber filed a statement of claim in the amount of $1,042,080.09 for work performed on the South Plaquemines Project.[14] As the Court explained in an earlier order, 84 Lumber did not provide proper notice of the June 2012 statements of claim.[15] Specifically, although the statute required 84 Lumber to provide written notice by registered or certified mail to Paschen, *see* La. R.S. § 38:2247, 84 Lumber provided notice by email to Paschen's counsel.[16]

Paschen and Continental deposited bonds as security for 84 Lumber's statements of claim to induce the project owners to release payment to

---

[12] *Id.* at 5 ¶ 13.
[13] *Id.* at 3-4 ¶ 9, 4 ¶ 13; *see also* R. Doc. 263 at 4.
[14] *Id.*
[15] R. Doc. 263.
[16] *Id.* Although 84 Lumber acknowledged that its emailed communications did not satisfy the precise terms of Section 2247, it argued that all that is required under the statute is actual notice. This interpretation essentially rewrites the statute. The Court notes that actual notice is significantly broader than written notice "by registered or certified mail," potentially including notice by telephone or publication and introducing evidentiary uncertainty into a statutory process obviously designed to avoid issues about receipt of notice. While the Court is sympathetic to 84 Lumber's predicament, it will not rewrite a Louisiana statute that should be "strictly construed such that the privileges granted are not extended beyond the statute[]." *Wilkin v. Dev Con Builders, Inc.*, 561 So. 2d 66, 71 (La. 1990).

Paschen.[17] *See* La. R.S. § 38:2242.2. Release bonds for the two Osborne Project statements of claim were deposited on June 27, 2012, and January 4, 2013.[18] The release bond for the South Plaquemines Project statement of claim was deposited on August 3, 2012.[19]

On July 5, 2012, 84 Lumber sued Paschen and the Sureties, alleging that 84 Lumber was not paid in full for work performed on the Osborne and South Plaquemines Projects.[20] 84 Lumber sued under the LPWA, seeking payment on its June 2012 statements of claim from both Paschen and the Sureties (Counts One and Two).[21] 84 Lumber also brought a claim of unjust enrichment.[22] On February 5, 2013, 84 Lumber amended its complaint to add a breach of contract claim and to seek payment for materials provided and extra work performed on the projects.[23] 84 Lumber again amended its complaint on April 17, 2017, seeking recovery from the release bonds (Count Six).[24]

---

17   R. Doc. 249 at 1-2 ¶¶ 1-3.
18   *Id.* at 1 ¶ 1, 2 ¶ 3.
19   *Id.* at 2 ¶ 2.
20   R. Doc. 1.
21   *Id.* at 4-5 ¶¶ 13-14, 16.
22   *Id.* at 6 ¶ 18.
23   R. Doc. 28 at 4 ¶ 10, 6 ¶ 20.
24   R. Doc. 249.

4

The Court granted summary judgment against 84 Lumber on Counts One and Two, its initial LPWA claims, because its June 2012 statements of claim lacked proper notice.[25] The Court also granted summary judgment on the unjust enrichment claim.[26] Additionally, the Court dismissed 84 Lumber's claim for extra work performed on the projects.[27] Defendants now move for judgment on Count Six, 84 Lumber's release bond claim.[28] 84 Lumber responded,[29] defendants replied,[30] and 84 Lumber filed a sur-reply.[31]

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). It is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to

---

[25] R. Doc. 263 at 23.
[26] *Id.* at 24.
[27] R. Doc. 290.
[28] R. Doc. 272.
[29] R. Doc. 274.
[30] R. Doc. 285.
[31] R. Doc. 286.

dismiss, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there

is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

Like Counts One and Two, which were subject to an earlier motion for summary judgment, Count Six seeks payment for the work performed and materials supplied by 84 Lumber on the Osborne and South Plaquemines Projects. Count Six alleges a right to payment from Paschen and Continental by virtue of the release bonds.[32] Defendants principally contend that the release bond claim is not viable in light of the Court's order granting summary judgment on 84 Lumber's LPWA claims in Counts One and Two.[33] Additionally, defendants argue that 84 Lumber's release bond claims are perempted by Section 2247's one-year limitation period.[34]

### A. 84 Lumber's Release Bond Claim Is Derivative of Its Earlier-Asserted LPWA Claims

The purpose of the LPWA is "to protect those contributing to the construction, alteration, or repair of public works." *Pierce Foundations, Inc. v. Jaroy Constr., Inc.*, 190 So. 3d 298, 306 (La. 2016). To accomplish this

---

[32] R. Doc. 249 at 3 ¶ 5.
[33] R. Doc. 272-1 at 2.
[34] R. Doc. 285 at 6-9.

purpose, the LPWA first requires that the contractor for projects like the Osborne and South Plaquemines Projects post a bond "for the payment by the contractor or subcontractor to claimants as defined in R.S. 38:2242." *Id.* at 301 (quoting La. R.S. § 38:2241(A)(2)). Section 2242 defines a "claimant" as:

> any person to whom money is due pursuant to a contract with the owner or a contractor or subcontractor for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works . . . .

La. R.S. § 38:2242(A). The LPWA "further establishes a means for asserting a claim":

> Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.

*Pierce*, 190 So. 3d at 301-02 (footnote omitted) (quoting La. R.S. § 38:2242(B)). But before a subcontractor not in privity with the general contractor may assert a right of action against the general contractor on the bond, the subcontractor must provide proper notice. La. R.S. § 38:2247; *see also Elec. Supply Co., Inc. v. Great Am. Ins. Co.*, 973 So. 2d 827, 830 (La. App. 2 Cir. 2007) ("[T]he notice referenced in [Section] 2247 is to be given

to the contractor to preserve the right of action against the contractor or the surety.").

In effect, these provisions "give certain classes of persons not enjoying privity of contract with the general contractor or with the governing authority a claim nevertheless against the general contractor and his surety and in some instances a claim against the governing authority itself." *Wilkin v. Dev Con Builders, Inc.*, 561 So. 2d 66, 71 (La. 1990); *see also Pierce*, 190 So. 3d at 301 (noting that the LPWA grants subcontractors "a privilege against the unexpended fund in the possession of the public entity with whom the original contract had been entered into," instead of a lien on the public work itself (quoting *Wilkin*, 561 So. 2d at 70)).

The public authority that owns the project becomes liable for these claims if it "makes final payment to the contractor without deducting the total amount of all outstanding claims . . . or without obtaining a bond from the contractor to cover" that amount. La. R.S. § 38:2242(D). To avoid the public authority's liability, "any interested party may deposit" a bond, cash, certified funds, or a certificate of deposit up to 125% of the amount asserted in the claim. *Id.* § 38:2242.2(A). This deposit "guarantee[s] payment of the obligation secured by the privilege," and cancels the statement of claim in the mortgage records. *Id.* § 38:2242.2(A)-(B). According to 84 Lumber,

Paschen and Continental deposited three release bonds under this provision to induce the project owners to release payment without incurring the risk of liability under Section 2242(D).[35]

84 Lumber now seeks to recover from these release bonds instead of the payment bond. Count Six of the second amended complaint purports to assert an additional right of action arising out of the release bonds.[36] But 84 Lumber fails to cite any legal authority recognizing a right to recover from release bonds that is independent of its right of action under the LPWA.

The statute itself does not provide an independent right of action for subcontractors to recover from release bonds. To the contrary, the LPWA describes only one process for filing a statement of claim. *See* La. R.S. § 38:2242(B). If such a statement is filed, Section 2242.2 permits a contractor (or any other interested party) to deposit a bond or other security in order "to guarantee payment of the obligation secured by the privilege." *Id.* § 38:2242.2(A). Thus, the statutory framework suggests that a release bond provides security for the privilege created in favor of the claimant who properly files a statement of claim under the LPWA.

---

[35] R. Doc. 249 at 1-2 ¶¶ 1-3.
[36] *Id.* at 3 ¶ 5.

10

Louisiana courts have interpreted similar release bond provisions in this way. One court of appeal described the release bond authorized by the Private Works Act as "merely another form of security substituted for the lien." *Brunet v. Justice*, 264 So. 2d 743, 746 (La. App. 4 Cir. 1972); *see also* La. R.S. § 9:4841. The *Brunet* court further stated that "no greater rights can [i]nure to the claimant under the bond than he possessed under the lien." *Id.* Another court of appeal applied the *Brunet* court's holdings to the Public Works Act, concluding that the release bond "secured payment for [the plaintiff's] claim under" that act. *D & J Constr. Co. v. Mid-Continent Stone Co.*, 571 So. 2d 762, 765 (La. App. 2 Cir. 1990). The *D & J Construction* court also cited a law review survey for the proposition that filing a release bond "should neither enlarge nor diminish the substantive rights of the claimant." *Id.* (quoting Thomas Harrell, *Security Devices, The Work of the Louisiana Appellate Courts for the 1972–1973 Term*, 34 La. L. Rev. 197, 273 (1974)). A third court of appeal also described release bonds under the Public Works Act as "merely a form of security substituted for [the plaintiff's] claims against the funds held by the [public authority]." *LeBlanc & Theriot Equip. Co. v. H & S Constr. Co.*, 591 So. 2d 1274, 1277 (La. App. 3 Cir. 1991).

Based on the statutory framework and Louisiana caselaw, the Court concludes that the filing of a release bond does not enlarge the substantive

11

rights of a subcontractor under the LPWA. Accordingly, 84 Lumber's claim against Paschen and Contintental on each release bond depends on a statement of claim that satisfies the filing and notice requirements of the LPWA.

84 Lumber's counterarguments do not hold water. First, 84 Lumber argues that Section 2247's notice provisions cannot apply to release bond claims.[37] More specifically, 84 Lumber notes that Section 2247 refers to "the bond furnished by the contractor," while Section 2242.2 permits "any interested party" to deposit a bond, cash, certified funds, or a certificate of deposit. *Compare* La. R.S. § 38:2247, *with id.* § 38:2242.2. 84 Lumber further contends that applying Section 2247 to release bond claims would create an absurd result because Section 2247 requires notice of a statement of claim within 45 days from the owner's acceptance of the project, while parties may file release bonds at any time.[38] According to 84 Lumber, a general contractor could deposit a release bond on the forty-sixth day after acceptance and then obtain a release on any subsequent statement of claim against the release bond because such claim would be late under Section 2247. These arguments are premised on a rigid distinction between release

---

37  R. Doc. 274 at 11-13.
38  *Id.* at 13.

bond claims and payment bond claims. Because no such distinction exists under Louisiana law, these arguments are meritless.

Second, in attempting to distinguish *D & J Construction* and *LeBlanc & Theriot Equipment*, 84 Lumber misreads *Pierce*, in which the Louisiana Supreme Court discussed the two avenues of relief for claimants under the LPWA. The first avenue, available only to parties in privity with the general contractor, is a direct action against the general contractor and the sureties on the payment bond. *Pierce*, 190 So. 3d at 303-04 & n.3. The second avenue is to file a statement of claim under Section 2242(B) to obtain a "privilege against the unexpended fund in the possession of the authorities with whom the original contract had been entered into." *Id.* at 305 (quoting *Wilkin*, 561 So. 2d at 70). If the subcontractor properly files and gives notice of this statement of claim, Section 2247 guarantees the subcontractor's right of action against the contractor and sureties. La. R.S. § 38:2247. 84 Lumber construes its earlier-asserted LPWA claims as following the first avenue and its release bond claim as following the second.[39] But 84 Lumber is not in privity with the general contractor and thus cannot maintain a direct action against Paschen and the Sureties. Therefore, Count Six necessarily relies on the same avenue of relief as Counts One and Two.

---

39   R. Doc. 274 at 9, 14-15.

As the Court explained in its earlier order, compliance with Section 2247 is a prerequisite to a subcontractor's right of action against a general contractor not in privity with the subcontractor. Because the Court has found that 84 Lumber failed to give proper notice under Section 2247 of its June 2012 statements of claim, 84 Lumber has no right of action under the LPWA and cannot recover from the release bonds related to those claims. The Court's earlier order, however, did not apply to the November 2011 statement of claim for $3,507.16 in materials. And defendants expressly stated that this November 2011 claim was not relevant to their motion for summary judgment.[40] Thus, the Court's earlier grant of summary judgment does not bar recovery from the release bond related to 84 Lumber's claim for $3,507.16 in materials.

### B. 84 Lumber's Release Bond Claim Is Not Untimely

Defendants next argue that Count Six is untimely because the one-year limitation period in Section 2247 is peremptive.[41] A perempted claim under Louisiana law cannot relate back to the original complaint under Federal Rule of Civil Procedure 15(c). *See D & S Marine Transp., L.L.C. v. S & K Marine, L.L.C.*, No. 14-2048, 2015 WL 5838220, at *4 (E.D. La. Oct. 7, 2015).

---

40 R. Doc. 220-1 at 6.
41 R. Doc. 285 at 6-9.

But the Louisiana Supreme Court has twice referred to the limitation period in Section 2247 as prescriptive, not peremptive. *See Pierce*, 190 So. 3d at 305 ("La. R.S. [§] 38:2247 is first and foremost a prescription provision . . . ."); *Honeywell, Inc. v. Jimmie B. Guinn, Inc.*, 462 So. 2d 145, 149 (La. 1985). This Court will not deviate from such clear guidance.

Under Rule 15(c), 84 Lumber's release bond claim may relate back to an earlier pleading if it "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In its first amended complaint, filed on February 5, 2013, 84 Lumber asserted a claim for $3,507.16 in materials provided to Paschen.[42] Thus, to the extent 84 Lumber's release bond claim seeks recovery based on the November 2011 statement of claim for the same $3,507.16 in materials, the claim relates back to February 5, 2013. According to defendants, the public authorities recorded their acceptance of both projects in Spring 2014, after 84 Lumber filed its first amended complaint.[43] Therefore, 84 Lumber's release bond claim is not prescribed by Section 2247.

---

[42] R. Doc. 28 at 4 ¶ 11, 6 ¶ 21.
[43] R. Doc. 285 at 7.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for judgment on the pleadings with respect to the June 2012 statements of claim. The Court DENIES defendants' motion with respect to the November 2011 statement of claim.

New Orleans, Louisiana, this __14th__ day of September, 2017.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE