UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 84 LUMBER COMPANY | CIVIL ACTION |
| VERSUS | NO. 12-1748 |
| F.H. PASCHEN, S.N. NIELSEN & ASSOCIATES, LLC, ET AL. | SECTION "R" (5) |

## **ORDER AND REASONS**

Defendant F.H. Paschen, S.N. Nielsen & Associates, LLC (Paschen) moves for attorney's fees, and plaintiff 84 Lumber Company moves to amend or alter final judgment under Federal Rule of Civil Procedure 59(e).[1] For the following reasons, the Court denies both motions.

**I.   BACKGROUND**

This case arises out of two school construction projects in Louisiana.[2] Paschen entered into contracts to build an elementary school at the Mildred Osborne School in New Orleans (Osborne Project) and a high school in South Plaquemines Parish (South Plaquemines Project).[3] On both projects,

---

[1]   R. Doc. 326.
[2]   R. Doc. 28 at 2-3 ¶ 5.
[3]   *Id.* at 3 ¶ 5.

Paschen was the general contractor.[4] Both projects were subject to the provisions of the Louisiana Public Works Act (LPWA), La. R.S. § 38:2241, *et seq.*, and therefore each project required the general contractors to post payment bonds before construction could begin.[5] Defendants Continental Casualty Company, Safeco Insurance Company of America, and Fidelity & Deposit Company of Maryland (collectively, the Sureties) issued the required bonds.[6] Paschen subcontracted a portion of both projects to J&A Construction Management Resources Company, Inc. (J&A).[7] J&A in turn subcontracted a portion of its work on both projects to 84 Lumber.[8]

According to 84 Lumber, in April 2011, Paschen and J&A stopped paying 84 Lumber for its work on the projects.[9] As a result, on November 29, 2011, 84 Lumber filed sworn statements of claims for money owed on both projects in compliance with the LPWA. Specifically, 84 Lumber claimed at least $549,778.16 for the Osborne Project and at least $1,666,921.66 for

---

[4] *Id.* at 2 ¶ 5.
[5] *Id.* at 3 ¶ 6.
[6] *Id.*
[7] *Id.* at 3 ¶ 7.
[8] *Id.* at 3 ¶ 9.
[9] R. Doc. 1 at 3-4 ¶ 9; *see also* R. Doc. 214-11 at 1.

the South Plaquemines Project.[10] 84 Lumber also filed a statement of claim for $3,507.16 in materials supplied on the Osborne Project.[11]

In an attempt to "compromise partially their differences," Paschen and 84 Lumber entered into two agreements in May 2012, covering both projects.[12] Under the agreements, Paschen agreed to pay 84 Lumber $1,297,603, and 84 Lumber agreed to indemnify, defend, and hold Paschen harmless from certain claims related to 84 Lumber's work on the projects.[13] Also in May 2012, 84 Lumber cancelled its November 2011 sworn statements for both projects and removed them from the mortgage records of Orleans Parish and Plaquemines Parish, respectively.[14]

Less than one month after cancelling both statements, on June 8, 2012, 84 Lumber filed two new sworn statements of claims, one for each project. 84 Lumber claimed $808,520.39 for the Osborne Project, and $1,042,080.09 for the South Plaquemines Project.[15] Paschen and Continental later posted release bonds for these statements of claim.[16]

---

[10] R. Doc. 217-27 at 4; R. Doc. 214-13 at 4.
[11] R. Doc. 28 at 5 ¶ 13.
[12] R. Doc. 214-31 (Osborne Project); R. Doc. 214-15 (South Plaquemines Project).
[13] R. Doc. 214-31 at 2; R. Doc. 214-15 at 2.
[14] R. Doc. 214-20; R. Doc. 210 at 8.
[15] R. Doc. 214-32 at 4 (Osborne Project); R. Doc. 214-21 at 7 (South Plaquemines Project).
[16] R. Doc. 249 at 1-2 ¶¶ 1-3.

3

On July 5, 2012, 84 Lumber sued Paschen and the Sureties, alleging that 84 Lumber was not paid in full for work performed on the Osborne and South Plaquemines Projects.[17] 84 Lumber sued under the LPWA, seeking payment on its June 2012 statements of claim from both Paschen and the Sureties.[18] 84 Lumber amended its complaint on April 17, 2017, seeking recovery from the release bonds.[19] The Court granted summary judgment dismissing 84 Lumber's initial LPWA claims because the June 2012 statements of claim lacked proper notice under Louisiana Revised Statutes § 38:2242(B).[20] Later, the Court granted judgment on the pleadings and dismissed 84 Lumber's release bond claim.[21] The Court entered final judgment on January 22, 2018.[22]

On February 2, Paschen moved for attorney's fees based on the May 2012 compromise agreements.[23] 84 Lumber then moved to amend or alter final judgment in light of new evidence purportedly included in Paschen's motion.[24]

---

[17] R. Doc. 1.
[18] *Id.* at 4-5 ¶¶ 13-14, 16.
[19] R. Doc. 249.
[20] R. Doc. 263 at 23.
[21] R. Doc. 296.
[22] R. Doc. 319.
[23] R. Doc. 324.
[24] R. Doc. 326.

4

## II. DISCUSSION

### A. May 2012 Agreements

Paschen's and 84 Lumber's motions both seek relief based on the May 2012 agreements signed by the parties. Each agreement, one for the Osborne Project and the other for the South Plaquemines Project, is entitled "Partial Compromise and Agreement for Defense and Indemnity."[25] The agreements explain that Paschen had been making joint payments to J&A and 84 Lumber for work performed by 84 Lumber, but had ceased doing so in recent weeks. The parties entered into the agreements "in order to compromise partially their differences, and induce Paschen to continue payments under the J&A Subcontract."[26]

Under the terms of the South Plaquemines Project agreement, 84 Lumber agreed to "indemnify, defend and hold Paschen . . . harmless from and against any claim . . . , and against any suit to enforce or recover on such [claim]," including attorney's fees, arising "from or in connection with 84 Lumber's work, on the Plaquemines Project, or related to work, materials or equipment supplied or asserted to have been supplied, by any of 84's direct or lower-tier subcontractors."[27] This indemnity obligation did not apply to

---

[25] R. Doc. 214-15; R. Doc. 214-31.
[26] R. Doc. 214-15 at 1; R. Doc. 214-31 at 1.
[27] R. Doc. 214-15 at 2.

5

claims by subcontractors "who contracted directly with J&A, with whom J&A did not contract at 84 Lumber's insistence."[28]

In return, Paschen agreed to pay 84 Lumber $1,297,603 for the South Plaquemines Project.[29] This payment would be by check, jointly payable to 84 Lumber and J&A, and already endorsed by J&A. Paschen also agreed to "[m]ake future payments to 84 Lumber jointly with J&A, . . . without 84's having to produce lien waivers from its subcontractors and suppliers."[30] But Paschen would "not be obliged to make any payment for work which Owner has withheld payment to Paschen because of a lien filed on either Project."[31] The agreement applied "only to obligations of the signing parties to each other on that project."[32]

### B. Attorney's Fees

Paschen asserts that it is entitled attorney's fees under the May 2012 agreements. Specifically, Paschen argues that 84 Lumber agreed to pay attorney's fees expended in defense of any claims that arise from or in

---

[28] *Id.* The Osborne Project agreement contains substantially similar, though not identical, language. R. Doc. 214-31 at 2.
[29] R. Doc. 214-15 at 2. The agreements contain no payment obligation for work performed on the Osborne Project.
[30] *Id.* at 2-3.
[31] *Id.* at 3.
[32] *Id.*

connection with 84 Lumber's work on the projects—including 84 Lumber's own claims in this lawsuit.[33]

Litigants are liable for their own attorney's fees, absent a statute or contract providing otherwise. *See Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975). Under Federal Rule of Civil Procedure 54(d)(2), a party can seek attorney's fees by motion no later than 14 days after the entry of judgment "unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). The Advisory Committee Note explains that Rule 54(d) does not "apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment. Courts have distinguished between attorney's fees under "prevailing party" contract provisions (which are properly sought in a Rule 54(d) motion) and attorney's fees under other types of contract provisions (which are recoverable as damages and must be pleaded and proved). *Compare Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1242 (5th Cir. 1984) (defendant entitled to attorney's fees when he became "prevailing party" after appeal), *and Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000)

---

[33] R. Doc. 324-1 at 6.

("Fees for work done during the case should be sought after decision, when the prevailing party has been identified . . . ."), *with Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006) ("Where attorney's fees are an element of damages, such as in an indemnification clause, the award of attorneys' fees should be denied where the party seeking them fails to carry its burden of proof at trial."); *see also Malin Int'l Ship Repair & Drydock, Inc. v. M/V SEIM SWORDFISH*, 611 F. Supp. 2d 627, 636 (E.D. La. 2009) (noting this distinction).

Paschen seeks attorney's fees based on 84 Lumber's duty to indemnify, defend, and hold harmless—not based on the prevailing party provision of the May 2012 settlement agreements.[34] As an initial matter, Paschen has not shown that it is entitled attorney's fees under these contracts. The contractual language itself is ambiguous. On the one hand, 84 Lumber's indemnity obligation may be read as applying to any claim arising from 84 Lumber's work on the projects *and* any claim related to work by 84 Lumber's subcontractors. This broader interpretation would cover claims by 84 Lumber itself, thus operating as a release of 84 Lumber's claims against

---

[34] The agreements do provide that "[i]f either party files a suit to enforce this agreement, the prevailing party in such suit shall be entitled to recover . . . attorneys' fees." R. Doc. 214-15 at 3. The parties do not discuss, and the Court does not decide, whether this provision applies in this case.

Paschen. *Cf. In re Y & S Marine, Inc.*, No. 10-2094, 2013 WL 3874883 (E.D. La. July 25, 2013) (interpreting indemnity obligation to cover direct claims between the parties in addition to third-party claims). On the other hand, the obligation may extend only to claims *by* 84 Lumber's subcontractors, and arising from 84 Lumber's work. This narrower interpretation accords with general usage of indemnification provisions. *See, e.g.*, *Sovereign Ins. Co. v. Texas Pipe Line Co.*, 488 So. 2d 982, 984-85 (La. 1986) (discussing a broadly worded indemnification provision in terms of claims by third parties against the indemnitee). Additionally, it would be absurd to read the contracts as requiring 84 Lumber to *defend* Paschen against 84 Lumber's own claim. The contracts also expressly exclude claims by J&A's subcontractors "with whom J&A did not contract at 84 Lumber's insistence," which may reasonably be read to include 84 Lumber itself.[35]

Reading the contract as a whole, in light of general usage, the scope of 84 Lumber's indemnity obligation is ambiguous. But parol evidence suggests that the parties did not intend for 84 Lumber's indemnity obligation under the May 2012 agreements to operate as a release of 84 Lumber's direct claims against Paschen. In an email dated March 28, 2012, 84 Lumber's counsel sought to clarify that "[Paschen] and 84 are reserving all rights

---

[35] R. Doc. 214-15 at 2.

9

regarding the 'disputed' amounts" Paschen allegedly owed 84 Lumber.[36] In response, Paschen's counsel stated: "We understand you reserve rights to dispute backcharges."[37] Paschen has not pointed to any extrinsic evidence suggesting that the parties intended for 84 Lumber's indemnity obligation to operate as a release of 84 Lumber's direct claims against Paschen. Thus, Paschen has not shown that it is entitled attorney's fees under the May 2012 agreements.

Even if Paschen were entitled attorney's fees, however, a Rule 54(d) motion is not the proper vehicle to seek such fees. Under Louisiana law, a claim for indemnification is its own cause of action. *See Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987). Moreover, "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Id.* In earlier pleadings, Paschen generally asserted that it is entitled attorney's fees, and argued that the May 2012 agreements constituted a release of 84 Lumber's claims against it. But Paschen neither pleaded nor proved a cause of action for indemnification for attorney's fees in this action, and could not have done so in any event because the cause of action had not yet accrued. Thus, Paschen may not now seek

---

[36] R. Doc. 327-1 at 12.
[37] *Id.*

10

attorney's fees based on 84 Lumber's duty to indemnify, defend, and hold harmless.

## C. Amendment of Final Judgment

84 Lumber seeks to amend or alter final judgment in light of Paschen's purported admission in its motion for attorney's fees that there was a direct contractual relationship between the two parties. According to 84 Lumber, the existence of a direct contractual relationship between the parties undermines the Court's order granting summary judgment against 84 Lumber on its payment bond claims. In that order, the Court dismissed 84 Lumber's LPWA claims because 84 Lumber's June 2012 statements of claim lacked proper notice.[38] Specifically, 84 Lumber failed to provide written notice to Paschen, by registered or certified mail, of its statements of claim. *See* La. R.S. § 38:2247. This specific notice requirement applies only if a claimant lacks a direct contractual relationship with the general contractor. *Id.* 84 Lumber therefore argues that because a direct contractual relationship existed between it and Paschen, it was not required to satisfy Section 2247's notice requirement.

A district court has considerable discretion to grant or deny a motion under Federal Rule of Civil Procedure 59(e). *See Edward H. Bohlin Co. v.*

---

[38]  R. Doc. 263 at 23.

*Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). The Court must "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Id.* A moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law. *See Fid. & Deposit Co. of Md. v. Omni Bank*, 1999 WL 970526, at *3 (E.D. La. Oct. 21, 1999).

The Court denies 84 Lumber's motion for several reasons. First, 84 Lumber stated in the pretrial order that "84 Lumber and [Paschen] do not have contractual privity."[39] This admission is binding on 84 Lumber. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000) ("[A] joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." (citation omitted)); *In re El Paso Refinery, L P*, 171 F.3d 249, 255 (5th Cir. 1999) ("Generally, stipulations in a pretrial order bind the parties, absent modification.").

---

[39]   R. Doc. 210 at 5.

Second, 84 Lumber fails to establish a sufficient ground to alter or amend final judgment. Although 84 Lumber portrays the existence of a direct contractual relationship between the parties as new evidence, there is nothing new about the May 2012 agreements. These agreements were in the summary judgment record, and the Court explicitly discussed them in its summary judgment order.[40] 84 Lumber's argument, however, is new. At no point before now has 84 Lumber argued that Section 2247's notice requirement was inapplicable because of the May 2012 agreements. But a party's failure to raise an argument does not justify altering a final judgment under Rule 59(e). *See Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) ("This Court has held that [a Rule 59(e)] motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").

Third, 84 Lumber's novel argument does not hold water. Section 2247 imposes a notice requirement on a certain of class of claimants: those who have a contractual relationship with a subcontractor but not with the general contractor. The Louisiana Supreme Court has noted that the notice requirement does not apply "where preexisting contractual rights exist." *Pierce Foundations, Inc. v. Jaroy Constr., Inc.*, 190 So. 3d 298, 304 (La.

---

[40] *Id.* at 3-4.

2016). In other words, if a claimant may proceed "directly in contract," a claimant need not satisfy Section 2247's notice requirement (or any other provision of the LPWA). *Id.* at 305. Here, even if the May 2012 agreements created contractual rights in favor of 84 Lumber, there is no indication that those contractual rights preexisted the work performed by 84 Lumber. 84 Lumber filed its statements of claim for almost two million dollars in unpaid work just one month after the May 2012 agreements were executed. It is unclear how much, if any, of this work was performed between May and June 2012.

Additionally, the May 2012 agreements impose duties upon Paschen that are collateral to the work actually performed by 84 Lumber. The Louisiana Supreme Court's discussion of Section 2247 in *Pierce Foundations* suggests that a "contractual relationship" requires a contract for work upon which a payment claim is based—not some collateral contract between the parties. 190 So. 3d at 305. Here, the May 2012 agreements were not a contract for work upon which 84 Lumber's LPWA claims were based. The agreements obliged Paschen to make joint payments to 84 Lumber and J&A for work performed by 84 Lumber. Courts have held that such joint check arrangements do not create a contractual relationship that would relieve a claimant of the specific notice requirements. *See United States ex rel. Light*

*& Power Utils. Corp. v. Liles Constr. Co.*, 440 F.2d 474, 478 (5th Cir. 1971) (noting that an "agreement between [general contractor] and [claimant] to issue jointly payable checks . . . did not establish a contractual relationship" between the parties in a Miller Act case); *accord United States ex rel. State Elec. Supply Co. v. Hesselden Constr. Co.*, 404 F.2d 774, 777 (10th Cir. 1968); *Dial Block Co. v. Mastro Masonry Contractors*, 863 A.2d 373, 379 (N.J. Super. Ct. App. Div. 2004).

Moreover, Paschen had previously agreed to issue joint checks. According to the pretrial order, "on January 5, 2011, [Paschen], J&A, and 84 Lumber executed a Joint Check Agreement requiring joint checks for any payments related to 84 Lumber's work."[41] Paschen's contract with J&A explicitly contemplates such joint checks. The contract provides: "In the event [Paschen] has reason to believe that labor, material or other obligations incurred in the performance of [J&A's] Work are not being paid, [Paschen] may take any steps [Paschen] deems necessary to insure that each such obligation is being paid including, but not limited to, the issuance of checks jointly to [J&A] and the person or entity to whom [J&A] owes an obligation . . . ."[42] The contract clarifies, however, that it does "not create any

---

[41] R. Doc. 210 at 7.
[42] R. Doc. 236-3 at 4.

obligation on [Paschen's] part to pay [J&A's] lower-tier subcontractors," such as 84 Lumber.[43] Thus, the May 2012 agreements do not suffice to create a contractual relationship that would relieve 84 Lumber of its duty to provide written notice under Section 2247.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Paschen's motion for attorney's fees and 84 Lumber's motion to alter or amend final judgment.

New Orleans, Louisiana, this __27th__ day of March, 2018.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[43] *Id.* at 5.